EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mónica Rodríguez Ocasio, Radamés Pérez Rodríguez<br><br>Recurridos<br><br>v.<br><br>Administración de Compensación por Accidentes de Automóviles<br><br>Peticionarios | Certiorari<br><br>2017 TSPR 52<br><br>197 DPR \_\_\_\_ |
| Iván González García<br><br>Recurrido<br><br>v.<br><br>Administración de Compensaciones por Accidentes de Automóviles<br><br>Peticionarios | |

Número del Caso: AC-2013-38
            Cons. AC-2013-44


Fecha: 11 de abril de 2017

Tribunal de Apelaciones:

    Región Judicial de San Juan Panel III

Abogado de la Parte Peticionaria:

    Lcdo. Christian Cintrón Pérez
    Lcdo. Adrián Sánchez Pagán

Abogados de la Parte Recurrida:

        Lcdo. Antonio Adrover Robles
    Lcdo. Manuel Porro Vizcarra
    Lcdo. Jesús Rabell Méndez
    Lcdo. Carlos Rodríguez Muñiz
    Lcdo. José Valenzuela Alvarado
    Lcdo. Frank Zorrilla Maldonado
    Lcda. Marisé González Navas

Materia: Sentencia del Tribunal con Opinión de conformidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunida

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mónica Rodríguez Ocasio, Radamés Pérez Rodríguez<br><br>    Recurridos<br><br>        v.<br><br>Administración de Compensación por Accidentes de Automóviles<br><br>    Peticionarios<br>_____<br><br>Iván González García<br><br>    Recurrido<br><br>        v.<br><br>Administración de Compensaciones por Accidentes de Automóviles<br><br>    Peticionarios | AC-2013-38<br><br>Cons. con<br><br>AC-2013-44 |

SENTENCIA

En San Juan, Puerto Rico, a 11 de abril de 2017.

**I**

En el 2009 la ACAA determinó que era necesario implementar una serie de medidas para reducir su déficit operacional.[1] Conforme a la Resolución Núm. 2009 OCT-21A de 29 de octubre de 2009, la Junta de Directores de la ACAA aprobó un *Plan de Cesantías* para decretar la cesantía de

_____

[1] La Administración de Compensación por Accidentes de Automóviles (ACAA) es una corporación pública creada en virtud de la Ley de Protección Social por Accidentes de Automóviles, Ley Núm. 138 de 26 de junio de 1968, 9 LPRA sec. 2051 *et seq*.

aquellos empleados gerenciales que trabajaron por 9 años o menos en el servicio público. Para computar el tiempo de antigüedad, la ACAA estableció el 30 de junio de 2009 como fecha de corte uniforme debido a que la eliminación de puestos a esa fecha le permitiría desobligar los fondos necesarios para reducir significativamente el déficit proyectado. De esta forma, quedarían cesanteados los empleados que al 30 de junio de 2009 contaran con 9 años o menos tiempo en el servicio público (en adelante, los recurridos).

Con el *Plan de Cesantías* se aprobó una lista que detallaba los empleados que tenían 9 años o menos tiempo en el servicio público hasta la fecha elegida. En lo que nos concierne, la lista de certificación de antigüedad disponía que la Sra. Mónica Rodríguez Ocasio tenía 7 años, 10 meses y 6 días en el servicio público; el Sr. Radamés Pérez Rodríguez llevaba 8 años, 3 meses y 27 días, y el Sr. Iván E. González García contaba con 8 años, 10 meses y 9 días.

**A.   La jurisdicción limitada del Juez Administrativo de la ACAA, según la Sentencia emitida por el Tribunal de Apelaciones en el caso <u>Muler Santiago y otros v. ACAA</u>**

Luego de celebrar unas vistas informales, el 19 de febrero de 2010 la ACAA envió una "Notificación de Cesantía" a cada uno de los recurridos. En lo pertinente, las notificaciones leían como sigue:

> Cuando se le notificó la intención de cesantía el pasado 10 de noviembre de 2009, se le expresó [su derecho] a solicitar una vista informal, la que usted solicitó y se celebró, pero en ella usted

no pudo demostrar que existieron errores u omisiones en su certificación de antigüedad. Su cesantía será efectiva treinta (30) días después de haber recibido esta comunicación.[2]

Las notificaciones advertían que el empleado afectado podría apelar la decisión ante la Oficina del Juez Administrativo de la ACAA.[3] Así, los recurridos solicitaron revisión ante el Juez Administrativo y, entre otros asuntos, cuestionaron el establecimiento del *Plan de Cesantías*, la elección del término de más de 9 años de antigüedad y la utilización de una fecha uniforme para computar su antigüedad. No obstante, aún pendiente de resolver la solicitud de revisión, el 20 de agosto de 2010, los recurridos y otros empleados cesanteados presentaron una moción ante el Juez Administrativo en la que alegaron que dicho funcionario carecía de jurisdicción para revisar los asuntos relacionados al *Plan de Cesantías*. Al atenderla, el Juez Administrativo resolvió que tenía jurisdicción, por lo que ordenó la continuación de los procedimientos.

Inconformes, los recurridos y los otros empleados acudieron en revisión al Tribunal de Apelaciones con el recurso Muler Santiago y otros v. ACAA, KLRA201001000. En éste reiteraron que el Juez Administrativo no tenía jurisdicción para revisar los aspectos del *Plan de Cesantías*. Específicamente plantearon el siguiente error:

---

[2] Apéndice del Recurso AC-2013-0038, pág. 241.

[3] Al puesto de Juez Administrativo de la ACAA antes se le llamaba Oficial Examinador.

**Erró el Honorable Juez Administrativo al declarar NO HA LUGAR el planteamiento de falta de jurisdicción de los recurrentes** y al resolver que la determinación de cesantear a los recurrentes fue una que correspondió al Director Ejecutivo de la ACAA y que el Reglamento de Personal de la agencia recurrida concede al Juez Administrativo la facultad de revisar esa determinación. (Énfasis suplido).[4]

Luego de examinar las disposiciones legales aplicables, el 24 de noviembre de 2010 el Tribunal de Apelaciones emitió Sentencia en el caso <u>Muler Santiago y otros v. ACAA</u>, KLRA201001000. El foro apelativo intermedio interpretó que la determinación de cesantear a los empleados gerenciales fue una decisión de naturaleza gerencial exclusivamente tomada por la Junta de Directores, la que —por su naturaleza— estaba fuera del alcance de la jurisdicción del Juez Administrativo. Entre las disposiciones examinadas, se encuentra la Sec. 18.1(a) del Reglamento de Personal para los Empleados Gerenciales, aprobado el 19 de julio de 2005 (*Reglamento de Personal*), que dispone que "[el Juez Administrativo de la ACAA] tendrá la facultad de resolver y adjudicar todas las quejas, querellas, reclamaciones o apelaciones que radiquen los empleados cubiertos por este Reglamento en relación con los derechos concedidos por la legislación y reglamentación aplicable". Por otra parte, la Sección 18.2(a) del *Reglamento de Personal* establece, entre otros, que el Juez Administrativo "tendrá jurisdicción para ventilar […] aquellas otras quejas o querellas que a [su]

---

[4] Apéndice del Recurso AC-2013-0044, pág. 279.

juicio […] afecten los derechos adquiridos de los empleados del servicio de carrera y de confianza de la ACAA". El foro apelativo intermedio también citó a Molini Gronau v. Corp. P.R. Dif. Pub., 179 DPR 674 (2010), un caso en el que este Tribunal Supremo interpretó que las cesantías decretadas por la Corporación de Puerto Rico para la Difusión Pública debían revisarse ante el Tribunal de Primera Instancia por tratarse de determinaciones emitidas por la Junta de Directores de la mencionada corporación. En consideración a lo anterior, el Tribunal de Apelaciones concluyó que las notificaciones de cesantía emitidas por la ACAA eran defectuosas, por cuanto identificaban al Juez Administrativo como el funcionario con jurisdicción para atender todos los planteamientos relacionados a las cesantías.

En síntesis, en el caso Muler Santiago y otros v. ACAA, supra, el Tribunal de Apelaciones: (1) determinó que el Juez Administrativo de la ACAA tenía "**jurisdicción exclusivamente para dilucidar aspectos de hecho** relacionados con la aplicación del criterio de antigüedad", entiéndase, para dilucidar si los empleados cesanteados tenían o no más de 9 años de antigüedad al 30 de junio de 2009, y (2) dispuso que cualquier otro asunto debía revisarse ante el Tribunal de Primera Instancia. (Énfasis suplido).[5] Consecuentemente, el foro

---

[5] Véase la Sentencia del caso Muler Santiago y otros v. ACAA, KLRA201001000, emitida el 24 de noviembre de 2010; Apéndice del Recurso AC-2013-0044, págs. 271-295.

apelativo intermedio ordenó la devolución de los casos al Juez Administrativo de la ACAA para que dicho funcionario determinara el tiempo de antigüedad de los empleados y orientó a las partes que podrían revisar cualquier otro asunto ante el Tribunal de Primera Instancia dentro del término de 30 días desde que adviniera final y firme la Sentencia. **Los recurridos no solicitaron reconsideración de la Sentencia ni recurrieron ante este Tribunal, por tal razón lo allí resuelto advino final y firme.**

**B. La revisión judicial de las Resoluciones Enmendadas emitidas por el Juez Administrativo de la ACAA con posterioridad a la Sentencia Muler Santiago y otros v. ACAA**

De conformidad con las instrucciones de Muler Santiago y otros v. ACAA, supra, el Juez Administrativo de la ACAA procedió a celebrar unas vistas que se limitaron a dilucidar los aspectos de hecho relacionados al criterio de antigüedad. Posteriormente, el 4 de septiembre de 2012, **el Juez Administrativo emitió unas "Resoluciones Enmendadas" en las que confirmó las cesantías de los recurridos al concluir que éstos no demostraron que tenían más de 9 años de antigüedad al 30 de junio de 2009** (fecha de corte establecida por dicha corporación pública).[6] Además, consignó que la Sentencia dictada por el Tribunal de Apelaciones en Muler Santiago y otros v. ACAA, supra, advino "final y firme por no haber sido objeto de revisión por ninguna de las partes en el proceso".

---

[6] Véanse Resoluciones Enmendadas; Apéndice del Recurso AC-2013-0044, págs. 19-23; Apéndice del Recurso AC-2013-0038, págs. 111-115 y 262-268.

A pesar de que lo expuesto disponía del recurso, el Juez Administrativo añadió que la utilización de una "fecha uniforme para determinar la antigüedad de todos los empleados evitó cualquier señalamiento de discrimen por distintos motivos y evitó alegaciones de trato desigual injustificado y de favoritismo de unos empleados sobre otros". Para ello, citó a manera de analogía el caso Sánchez v. Depto. Vivienda, 184 DPR 95 (2011), en el que este Tribunal resolvió que el establecimiento de una fecha uniforme de cómputo de antigüedad brindó al proceso de cesantías decretado por la Ley Núm. 7-2009 un clima de pureza y transparencia que evitó la aplicación arbitraria del plan de cesantías.[7]

Inconformes, los recurridos presentaron por separado unos recursos de revisión judicial ante el Tribunal de Apelaciones (KLRA201200992, KLRA201200996 y KLRA201201001). En éstos plantearon que lo resuelto en Sánchez v. Depto. Vivienda, supra, no es aplicable a las cesantías decretadas por la ACAA porque la Ley Núm. 7-2009 no aplica a las corporaciones públicas. Además, adujeron que el establecimiento de una fecha cierta para computar la antigüedad de los empleados gerenciales era contraria a la Sección 11.4 del *Reglamento de Personal.* La Sección 11.4, *supra*, dispone que "[a] los fines de determinar la antigüedad, se considerará todo servicio prestado como

---

[7] Ley Núm. 7-2009, mejor conocida como la Ley Especial Decretando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, 3 LPRA sec. 8791 *et seq.*

empleado de la ACAA y en cualquier otra agencia o instrumentalidad del Gobierno del Estado Libre Asociado de Puerto Rico, sus corporaciones públicas y sus municipios". Amparándose en la cita anterior, los recurridos solicitaron que se añadiera al cómputo de su antigüedad el período que trabajaron desde el 30 de junio de 2009 (fecha de corte uniforme) hasta marzo de 2010 (fecha en que fueron efectivas sus cesantías).

Posteriormente, el Tribunal de Apelaciones consolidó los recursos KLRA201200992 y KLRA201200996 y atendió por separado el caso KLRA201201001. Luego de examinar los planteamientos de las partes, el foro apelativo intermedio emitió unas Sentencias en las que modificó las Resoluciones Enmendadas. **Dicho foro interpretó que la ACAA infringió la Sección 11.4 (6)(c) del Reglamento de Personal al computar la antigüedad de todos los empleados hasta una fecha cierta.**[8] Consecuentemente, instruyó a la ACAA que la antigüedad de sus empleados debía calcularse "de modo tal que incluya todos los servicios prestados hasta el último día laborable del empleado". (Énfasis omitido). Valga destacar que el Tribunal de Apelaciones no mencionó lo resuelto en Muler Santiago y otros v. ACAA, supra, a pesar de que dicho caso estaba citado en las Resoluciones Enmendadas del Juez Administrativo de la ACAA que revisaba.

---

[8] Véanse Sentencias del Tribunal de Apelaciones; Apéndice del Recurso AC-2013-0038, págs. 18-36; Apéndice del Recurso AC-2013-0044, págs. 2-18.

Insatisfecha con esa determinación, la ACAA recurrió ante este Foro mediante los recursos AC-2013-0038 y AC-2013-44.[9] **En lo pertinente, nos solicita la revocación de las Sentencias del Tribunal de Apelaciones fundada en que dicho tribunal estaba impedido de considerar asuntos que en una sentencia previa se había resuelto que no eran jurisdicción del Juez Administrativo de la ACAA.** Según adujo, el asunto jurisdiccional resuelto en Muler Santiago y otros v. ACAA, supra, constituye la "ley del caso" o una de las modalidades de cosa juzgada sobre los pleitos que revisamos. De todas maneras, la ACAA alegó que el establecimiento de la fecha de corte uniforme fue un ejercicio válido que brindó uniformidad, transparencia y certidumbre al proceso de cesantías de los empleados gerenciales.

Luego de que expidiéramos los recursos —atendidos como certiorari[10] y los consolidáramos- los recurridos comparecieron y reconocieron que no tenían más de 9 años de antigüedad al 30 de junio de 2009, pero insistieron en que su antigüedad debía computarse hasta las fechas en que fueron efectivas sus cesantías. En cuanto a los planteamientos de cosa juzgada y "ley del caso"

---

[9] La ACAA instó el recurso AC-2013-0038 para revisar la Sentencia emitida por el Tribunal de Apelaciones en los casos consolidados de la Sra. Mónica Rodríguez Ocasio y del Sr. Radamés Pérez Rodríguez, y el recurso AC-2013-0044 para revisar la Sentencia del Sr. Iván González García.

[10] El recurso adecuado es el de certiorari porque las Sentencias de las cuales la ACAA recurre son originadas de recursos de revisión administrativa y no de apelaciones en casos civiles. Véase Art. 3.002(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 221-2003, 4 LPRA sec. 24s(c).

presentados por la ACAA, el señor González García únicamente alegó que en la Sentencia <u>Muler Santiago y otros v. ACAA</u>, supra, no se resolvió la misma controversia de derecho que ahora revisamos, y que "por ende la alegación de la [ACAA] no es correcta".[11] En específico, señaló lo siguiente:

> En la apelación radicada por la ACAA como último punto se señala que existe la doctrina de cosa juzgada con respecto a la determinación de fecha de corte al 30 de junio de 2009 en vez del 22 de marzo de 2010 para ello citan el caso Muller Santiago y otros v. ACAA resuelto por el Honorable Tribunal de Apelaciones el 24 de noviembre de 2010, Caso Núm. KLRA2010-1000. Dicho caso no resolvió esa controversia de derecho, por ende la alegación de la parte apelante no es correcta.[12]

**Sin embargo, en el alegato conjunto (presentado luego de que se ordenara la consolidación de los recursos), los recurridos no hicieron referencia a la Sentencia <u>Muler Santiago y otros v. ACAA</u>, supra, ni alegaron que existe alguna de las excepciones a la aplicación de las doctrinas de cosa juzgada y "ley del caso".**

Contando con la comparecencia de todas las partes, nos disponemos a resolver.

## II

### A.   La revisión judicial de decisiones administrativas

La revisión judicial de las decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos y asegurarse

---

[11] Alegato del señor González García, pág. 12.

[12] Íd.

de que estos desempeñan sus funciones conforme a la ley.[13] Es norma reiterada que se debe otorgar deferencia judicial a las decisiones y actuaciones administrativas, por éstas poseer conocimientos especializados en los asuntos particulares que le han sido encomendados.[14] Por ello, la revisión judicial se limita esencialmente a examinar tres aspectos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de la evidencia sustancial, y (3) la revisión en todos sus aspectos de las conclusiones de derecho del organismo administrativo.[15] Al ejercer su función revisora, en primer lugar, el tribunal determinará si la actuación administrativa se ajusta al poder delegado.[16] Recordemos que aquella actuación administrativa que no obedezca al poder conferido es una actuación *ultra vires* de la agencia administrativa y, por ende, nula.[17]

Hemos resuelto que la deferencia a las decisiones administrativas solo cederá ante instancias apropiadas y meritorias, como lo son: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos que se le

---

[13] Torres v. Junta Ingenieros, 161 DPR 696, 707 (2004).

[14] Véanse: The Sembler Co. v. Mun. De Carolina, 185 DPR 800, 821 (2012); Batista, Nobbe v. JTA. Directores, 185 DPR 206, 215 (2012).

[15] Véanse: Batista, Nobbe v. JTA. Directores, supra, pág. 217; Asoc. Fcias. v. Caribe Specialty *et al*. II, 179 DPR 923, 940 (2010); Gutiérrez Vázquez v. Hernández y Otros, 172 DPR 232, 243 (2007).

[16] Caribe Comms., Inc. v. P.R.T.Co., 157 DPR 203, 213 (2002).

[17] Íd., págs. 213-214.

ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales.[18]

## B. Las doctrinas de impedimento colateral por sentencia y "ley del caso"

En nuestro ordenamiento jurídico, la doctrina de cosa juzgada es necesaria para la sana administración de la justicia y se define como lo ya resuelto por fallo firme de un juez o tribunal competente que lleva en sí la firmeza de su irrevocabilidad.[19] Su propósito es impartirle **finalidad** a los dictámenes judiciales de manera que éstos concedan certidumbre y certeza a las partes en el litigio.[20] Esta doctrina vela, por un lado, por el interés del Estado en que se le ponga fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribunales y, por otro lado, la deseabilidad de que no se someta a un ciudadano a las molestias que supone litigar la misma causa en repetidas ocasiones.[21] El Art. 1204 del Código Civil, 31 LPRA sec. 3343, consagra la doctrina de cosa juzgada en nuestra jurisdicción y dispone que "[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es

---

[18] The Sembler Co. v. Mun. De Carolina, supra, pág. 822 (citando a IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 744-745 (2012)).

[19] Presidential v. Transcaribe, 186 DPR 263, 273-274 (2012).

[20] P.R. Wire Prod. v. C. Crespo & Assoc., 175 DPR 139, 150-153 (2008); Parrilla v. Rodríguez, 163 DPR 263, 268 (2004).

[21] Presidential v. Transcaribe, supra, pág. 274.

necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron".

El impedimento colateral por sentencia constituye una modalidad de cosa juzgada.[22] Al igual que la doctrina de cosa juzgada, el impedimento colateral tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, y evitar litigios innecesarios y decisiones inconsistentes.[23] Ahora bien, esta se distingue de la doctrina de cosa juzgada en que para su aplicación no es necesario que se configure el requisito de identidad de causas.[24]

En síntesis, los requisitos para la aplicación de la doctrina de impedimento colateral son los siguientes: (1) se adjudicó un asunto, (2) **en una sentencia previa,** (3) luego de haberse litigado, (4) entre las mismas partes y (5) el hecho adjudicado es esencial para un segundo pleito. Así, la doctrina de impedimento colateral surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se litiga, dilucida y se determina mediante sentencia válida y final, y tal determinación es

---

[22] Presidential v. Transcaribe, supra, pág. 276; Beníquez v. Vargas, 184 DPR 210, 225 (2012).

[23] Íd.

[24] Presidential v. Transcaribe, supra, págs. 276-277.

concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas.[25] Consecuentemente, "el impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue [litigado y] adjudicado mediante sentencia final en un litigio anterior".[26] De esta forma, su aplicación se limita a aquellas cuestiones que, en efecto, fueron litigadas y adjudicadas en un primer caso.[27]

Debemos señalar que tanto la doctrina de impedimento colateral por sentencia como la de "ley del caso" procuran dar certidumbre, estabilidad y finalidad a los procesos judiciales al evitar el reexamen de aquellos asuntos que fueron adjudicados. La doctrina de impedimento colateral por sentencia sólo se puede invocar cuando existe un segundo litigio, por consiguiente, ésta no aplica cuando se trata de asuntos dentro de un mismo pleito.

Sobre la revisión de asuntos dentro de un **mismo pleito**, hemos señalado que en nuestra jurisdicción los derechos y obligaciones adjudicados mediante un dictamen judicial que adviene final y firme pueden constituir la "ley del caso".[28] En específico, las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas

---

[25] Íd., pág. 277; S.L.G. Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 155 (2011); P.R. Wire Prod. v. C. Crespo & Assoc., supra, pág. 152.

[26] P.R. Wire Prod. v. C. Crespo & Assoc., supra.

[27] Presidential v. Transcaribe, supra, pág. 277.

[28] Véanse: Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 8 (2016); Félix v. Las Haciendas, 165 DPR 832, 843 (2005); Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 606 (2000).

cuestiones finales consideradas y decididas por el Tribunal.[29] Así, la doctrina de "ley del caso" sólo puede invocarse cuando exista una decisión final en los méritos de la controversia.[30] Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve ante su consideración.[31] Por tanto, de ordinario, las controversias que han sido consideradas y adjudicadas en los méritos por el foro primario o por un tribunal apelativo no pueden reexaminarse.[32] Esto con el propósito de que las partes puedan, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras.[33]

Ahora bien, más que un mandato invariable o inflexible, la doctrina de "ley del caso" recoge una costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales.[34] Cabe señalar que esta doctrina dirige la discreción del tribunal, no limita su poder.[35] Por ello, hemos resuelto que, en situaciones excepcionales, si el caso vuelve ante la consideración del

---

[29] Cacho Pérez v. Hatton Gotay y otros, supra, pág. 9; Félix v. Las Haciendas, supra, pág. 843.

[30] Cacho Pérez v. Hatton Gotay y otros, supra.

[31] Íd.

[32] Cacho Pérez v. Hatton Gotay y otros, supra; Félix v. Las Haciendas, supra.

[33] Mgmt. Adm. Servs. Corp. v. ELA, supra, págs. 607-608.

[34] Íd., pág. 607.

[35] Cacho Pérez v. Hatton Gotay y otros, supra.

tribunal y éste entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, dicho foro puede aplicar una norma de derecho distinta a fin de resolver de forma justa.[36] En vista de lo anterior, hemos colegido que sólo cuando se presenta un atentado contra los principios básicos de la Justicia es que los tribunales pueden descartar la aplicabilidad de la doctrina de "ley del caso".[37]

### III

Recapitulando, en el caso Muler Santiago y otros v. ACAA, supra, el Tribunal de Apelaciones emitió una Sentencia en la que: (1) determinó que el Juez Administrativo de la ACAA tenía **"jurisdicción exclusivamente para dilucidar aspectos de hecho** relacionados con la aplicación del criterio de antigüedad", entiéndase, para dilucidar si los empleados cesanteados tenían o no más de 9 años de antigüedad al 30 de junio de 2009, y (2) dispuso que cualquier otro asunto debía revisarse ante el Tribunal de Primera Instancia. (Énfasis suplido). Los recurridos no solicitaron reconsideración de dicha Sentencia ni recurrieron ante este Tribunal, por tal razón lo allí resuelto advino final y firme. Según surge del expediente, los casos continuaron en la Oficina del Juez Administrativo de la ACAA en cuanto

---

[36] Íd.; Félix v. Las Haciendas, supra, pág. 844; Mgmt Adm. Servs. Corp. v. E.L.A., supra, pág. 608.

[37] Cacho Pérez v. Hatton Gotay y otros, supra, pág. 10; Noriega Rodríguez v. Hernández Colón, 130 DPR 919, 931 (1992).

a los aspectos de hecho, sin embargo, no tenemos constancia de que las partes hayan acudido al Tribunal de Primera Instancia para revisar cualquier otro asunto.

Luego de celebrar unas vistas, el Juez Administrativo de la ACAA emitió unas Resoluciones Enmendadas en las que confirmó las cesantías de los recurridos porque éstos no tenían más de 9 años de antigüedad al 30 de junio de 2009 (fecha de corte establecida por dicha corporación pública). En revisión, el Tribunal de Apelaciones interpretó que la ACAA infringió la Sección 11.4 (6)(c) del *Reglamento de Personal* (que requiere que se considere "todo servicio prestado"), al computar la antigüedad de todos los empleados hasta una fecha cierta. Por ello, ordenó que se añadiera al cómputo de antigüedad el tiempo que los empleados trabajaron desde el 30 de junio de 2009 hasta la fecha en que fueron efectivas sus cesantías (en marzo de 2010).

Ahora, la ACAA nos solicita la revocación de las Sentencias del Tribunal de Apelaciones. En lo pertinente, señala que el foro apelativo intermedio estaba impedido de considerar los asuntos que en una sentencia previa (<u>Muler Santiago y otros v. ACAA</u>, supra) se había resuelto que no eran jurisdicción del Juez Administrativo de la ACAA. Por su parte, los recurridos aceptan que no contaban con más de 9 años de antigüedad hasta el 30 de junio de 2009, pero insisten en que su antigüedad debía computarse hasta las fechas en que fueron efectivas sus cesantías. De esta

forma, los recurridos plantean *sub silentio* que la jurisdicción del Juez Administrativo de la ACAA es más amplia que lo resuelto en <u>Muler Santiago y otros v. ACAA</u>, supra*, sin siquiera alegar su incorrección o que existe alguna de las excepciones a la aplicación de la doctrina de impedimento colateral por sentencia.

En primer lugar, nos corresponde examinar si lo resuelto por el Tribunal de Apelaciones en el caso <u>Muler Santiago y otros v. ACAA</u>, supra, —sobre jurisdicción limitada del Juez Administrativo— es concluyente para la revisión de las Resoluciones Enmendadas emitidas por el Juez Administrativo de la ACAA.

Luego de haber examinado el expediente y los planteamientos presentados por las partes, entendemos que los casos que revisamos cumplen con los requisitos de la doctrina de "ley del caso". Particularmente, hubo una sentencia previa del Tribunal de Apelaciones que advino final y firme (<u>Muler Santiago y otros v. ACAA</u>, supra), en la que dicho foro adjudicó que el Juez Administrativo de la ACAA sólo tenía jurisdicción para revisar si los recurridos tenían o no más de 9 años de antigüedad al 30 de junio de 2009; la sentencia se emitió luego de que los recurridos y la ACAA litigaran cuál era el foro con jurisdicción sobre el *Plan de Cesantías*, y lo allí resuelto constituye un hecho esencial que permite disponer de este segundo litigio entre las mismas partes.

Además, luego de haber examinado preliminarmente las disposiciones legales citadas en <u>Muler Santiago y otros v. ACAA</u>, supra, entendemos que en los casos que revisamos no existe alguna circunstancia que permita exceptuar la aplicación de la doctrina de ley del caso sobre el asunto jurisdiccional. En específico, la determinación jurisdiccional se hizo de manera informada y no hallamos una razón importante que en este caso justifique variar el primer dictamen sobre jurisdicción del Juez Administrativo de la ACAA. De esta forma, cumplimos con la política de brindar finalidad a los litigios, se promueve la economía judicial, se evita que las partes tengan que defenderse en repetidas ocasiones, se brinda estabilidad a las sentencias y se evitan decisiones inconsistentes entre diversos foros sobre un mismo asunto.

Como explicamos, la determinación del Tribunal de Apelaciones en el caso <u>Muler Santiago y otros v. ACAA</u>, supra, —sobre jurisdicción limitada del Juez Administrativo— constituye la "ley del caso" sobre las Resoluciones Enmendadas emitidas por el Juez Administrativo de la ACAA y, consecuentemente, sobre los recursos de revisión judicial posteriormente presentados ante el Tribunal de Apelaciones.

Entonces, no existiendo controversia sobre que los recurridos no tenían más de 9 años de antigüedad al 30 de junio de 2009, es forzoso concluir que las Resoluciones Enmendadas del Juez Administrativo de la ACAA estuvieron

basadas en evidencia sustancial que obraba en los expedientes administrativos, se emitieron conforme a derecho, concedieron el remedio apropiado (confirmaron las cesantías por falta de antigüedad) y se dictaron dentro del marco de las funciones del Juez Administrativo.

De conformidad con lo anterior, el Tribunal de Apelaciones debió confirmar las cesantías de los recurridos. Sin embargo, dicho foro procedió a revocar las determinaciones del Juez Administrativo de la ACAA basándose exclusivamente en asuntos sobre los cuales previamente había resuelto que el Juez Administrativo de la ACAA no tenía jurisdicción. Ello constituyó una revocación implícita de su dictamen previo en Muler Santiago y otros v. ACAA, supra, y la misma se realizó sin siquiera haber mencionado el primer caso y sin haber cuestionado su corrección. Por los fundamentos expuestos, revocamos las Sentencias del Tribunal de Apelaciones y reinstalamos los dictámenes emitidos por el Juez Administrativo de la ACAA en los tres casos de referencia.

Nos parece esencial resaltar que los recurridos sostenían en Muler Santiago y otros v. ACAA, supra, que la Oficina del Juez Administrativo de la ACAA **no tenía jurisdicción** sobre ningún aspecto del *Plan de Cesantías*. Y ahora, *sub silentio*, pretendieron que los tribunales apelativos reconozcamos **una amplia jurisdicción** al Juez Administrativo con el propósito de que podamos revisar sus planteamientos sobre la ilegalidad del establecimiento de

una fecha específica para computar la antigüedad. Señalamos que el hecho de que se tratara de un planteamiento *sub silentio* de jurisdicción más amplia (para revisar asuntos que no fueron considerados en el primer pleito), y no de uno de falta de jurisdicción, en unión a que los recurridos ya tuvieron la oportunidad de litigar el asunto jurisdiccional en el primer pleito, fueron algunos de los factores que en este caso justificaron que prevaleciera la finalidad de la Sentencia Muler Santiago y otros v. ACAA, supra.

Aclaramos que de haber estado inconformes con lo resuelto por el Tribunal de Apelaciones en Muler Santiago y otros v. ACAA, supra, los recurridos debieron haber agotado el trámite apelativo —mediante una solicitud de reconsideración ante el Tribunal de Apelaciones o a través de la presentación de un recurso de *certiorari* ante esta Curia—. Asimismo, resaltamos que al advenir final y firme la Sentencia Muler Santiago y otros v. ACAA, supra, los recurridos no quedaron desprovistos de un mecanismo para revisar sus otros planteamientos pues, según se les advirtió en dicha Sentencia, éstos podían ejercer "su derecho a revisar ante el Tribunal de Primera Instancia la notificación de cesantía en el término de treinta (30) días, en cuanto a cualquier otro asunto que no sea antigüedad". Desconocemos si las partes ejercieron su derecho a acudir al Tribunal de Primera Instancia porque no lo informaron ante este Foro.

**IV**

Por los fundamentos expuestos, revocamos las Sentencias del Tribunal de Apelaciones en los casos KLRA201200992, KLRA201200996 y KLRA201201001. Por consiguiente, reinstalamos los dictámenes emitidos por el Juez Administrativo de la ACAA.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión de Conformidad.


                              Juan Ernesto Dávila Rivera
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Mónica Rodríguez Ocasio, Radamés Pérez Rodríguez<br><br>Recurridos<br><br>v.<br><br>Administración de Compensaciones por Accidentes de Automóviles<br><br>Peticionaria<br><br>---<br><br>Iván González García<br><br>Recurrido<br><br>v.<br><br>Administración de Compensaciones por Accidentes de Automóviles<br><br>Peticionaria | AC-2013-0038<br><br>cons. con<br><br>AC-2013-0044 |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 11 de abril de 2017

Nos corresponde determinar el efecto que tiene un dictamen emitido por el Tribunal de Apelaciones sobre determinaciones ulteriores de ese mismo foro al atender otro recurso de revisión dentro un mismo proceso administrativo. Por considerar que a la luz de la doctrina de ley del caso, el Tribunal de Apelaciones queda obligado por sus dictámenes

anteriores dentro de un mismo caso, estoy conforme con la Sentencia emitida por este Tribunal.

I

Como bien relata la Sentencia del Tribunal, la presente controversia gira en torno a un plan de cesantías iniciado por la Administración de Compensaciones por Accidentes de Automóviles (en adelante, "ACAA") en el año 2009. En el referido plan, la ACAA estableció el 30 de junio de 2009 como la fecha de corte uniforme para computar el tiempo de antigüedad de los empleados. Aquellos empleados que no cumplieran con nueve años de antigüedad para la fecha de corte, serían separados de sus empleos.

Los recurridos, al igual que otros empleados de la ACAA, recibieron notificaciones de cesantía luego de celebradas unas vistas informales. Inconformes, éstos solicitaron revisión de las determinaciones de cesantía ante el Juez Administrativo de la ACAA. Pendientes las revisiones, los recurridos y otros empleados presentaron una solicitud consolidada ante el Juez Administrativo en la cual reclamaban que éste carecía de jurisdicción sobre la materia, a la luz del caso de *Molini Grau v. Corp. P.R. Dif. Púb.*, 179 DPR 674 (2010). El 2 de septiembre de 2010, el Juez Administrativo notificó una resolución en la cual concluyó que tenía jurisdicción.

Oportunamente, los recurridos y otros empleados afectados por la resolución acudieron en revisión al Tribunal de Apelaciones. Mediante la Sentencia *Muler Santiago y otros v. ACAA*, KLRA201001000, 2010 WL 5877970

(T.A.P.R.) (24 de noviembre de 2010), el foro apelativo intermedio modificó la resolución del Juez Administrativo. En específico, el Tribunal resolvió que el Juez Administrativo el Juez Administrativo carecía de jurisdicción para considerar cualquier cuestión de derecho. Únicamente podría "dilucidar *aspectos de hecho* relacionados con la aplicación del criterio de antigüedad establecido por la Junta de Directores conforme al plan de cesantías aprobado por ésta". *Muler Santiago y otros v. ACAA*, KLRA201001000, 2010 WL 5877970, en la pág. *15 (T.A.P.R.) (24 de noviembre de 2010) (énfasis en el original). Es decir, no podía atender cuestionamientos a la legalidad del plan de cesantías; sólo podía hacer determinaciones de hecho dentro del marco jurídico provisto por el plan. A su vez, el foro apelativo intermedio dispuso que, a partir de la fecha en la cual su Sentencia advenga final y firme, comenzaría a discurrir un término de treinta (30) días para que los recurrentes pudieran acudir ante el Tribunal de Primera Instancia y cuestionar cualquier cuestión de derecho fuera de la jurisdicción del Juez Administrativo.

Devueltos los casos al foro administrativo, el Juez Administrativo emitió unas Resoluciones Enmendadas en las cuales concluyó que los empleados concernidos no tenían más de nueve años de antigüedad para la fecha de corte establecida. Por lo tanto, procedía cesantearlos. Éste añadió que la inclusión de una fecha uniforme para

determinar la antigüedad le brindó al proceso un clima de pureza y transparencia.

En desacuerdo, la Sra. Mónica Rodríguez Ocasio, el Sr. Radamés Pérez Rodríguez y el Sr. Iván González García, los recurridos de epígrafe, presentaron por separado recursos de revisión judicial ante el Tribunal de Apelaciones. En éstos, adujeron que erró el Juez Administrativo al utilizar una fecha uniforme para computar la antigüedad, puesto que ello era contrario al Reglamento de Personal de la ACAA. Posteriormente, el Tribunal de Apelaciones consolidó los recursos de la señora Rodríguez Ocasio y el señor Pérez Rodríguez, mientras que resolvió por separado el recurso de revisión presentado por el señor González García. En las dos Sentencias emitidas, el foro apelativo intermedio determinó que, en efecto, utilizar una fecha uniforme para computar la antigüedad contravenía el Reglamento de Personal de la ACAA. Consecuentemente, le ordenó a la ACAA calcular la antigüedad de los empleados tomando como fecha final de cómputo el último día laborable de éstos.

Inconforme con el resultado, la ACAA acudió ante este Foro en revisión. La peticionaria sostiene que la determinación previa del Tribunal de Apelaciones, mediante la cual ordenó al Juez Administrativo a limitarse a dirimir únicamente cuestiones de hecho relacionadas al cálculo de la antigüedad, impide que decisiones posteriores del Tribunal de Apelaciones dentro de los mismos procesos

consideren cuestiones de derecho, como lo sería una determinación sobre la fecha de corte aplicable. La ACAA arguye que, a la luz de la doctrina de cosa juzgada en su modalidad de impedimento colateral, es forzoso concluir que la determinación previa por el foro apelativo intermedio de ausencia de jurisdicción sobre la materia, que advino final y firme, impide que otro panel de ese foro posteriormente determine lo contrario.

## II

## A.

La doctrina de cosa juzgada en nuestro ordenamiento está codificada en el Artículo 1204 del Código Civil. El referido artículo reza:

> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Art. 1204, Cód. Civ. PR, 31 LPRA 3343.

Por su parte, el impedimento colateral por sentencia es una modalidad de la doctrina de cosa juzgada. Ésta se distingue de la cosa juzgada en tanto no requiere que exista la identidad de causas, entiéndase, de causas de acción. Véase *Presidential v. Transcaribe*, 186 DPR 263, 276 (2012); *SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 155 (2011); *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 221 (1992).

Tanto la doctrina de cosa juzgada como su modalidad de impedimento colateral versan sobre la relación entre un pleito anterior y un pleito posterior. La doctrina de impedimento colateral opera "cuando un hecho esencial para **el pronunciamiento de una sentencia** se dilucida y determina mediante sentencia válida y final **[y] tal determinación es concluyente en un segundo pleito** entre las mismas partes, aunque estén envueltas causas de acción distintas". *SLG-Szendrey Ramos*, 184 DPR en la pág. 155, citando a *Coop. Seg. Múlt. v. ELA*, 180 DPR 655, 673 (2011) (énfasis suplido); *Suárez v. ELA*, 162 DPR 43, 59 (2004); *Fatach v. Triple S*, 147 DPR 882, 889 (1999).

Una revisión somera del expediente de los casos consolidados no deja lugar a dudas sobre la procedencia de las sentencias conflictivas del Tribunal de Apelaciones, a saber, éstas provienen de los mismos procesos administrativos.[38] Estos procesos no concluyeron con la primera sentencia del Tribunal de Apelaciones. Al

---

[38] En cada una de las Resoluciones Enmendadas correspondientes a los tres recurridos, el Juez Administrativo indica, en relación al trámite de la primera Resolución emitida y su subsiguiente revisión por el Tribunal de Apelaciones, que "luego de analizar también la posición de la ACAA, emitimos resolución en el caso (*varios casos fueron consolidados para efectos de esta controversia exclusivamente*)". AC-2013-00044, *Apéndice*, pág. 20; AC-2013-0038, *Apéndice*, pág. 112; AC-2013-0038, *Apéndice*, pág. 262 (énfasis suplido). Por ende, sabemos que si bien la Resolución original fue una consolidada para atender la controversia jurisdiccional, el efecto de ésta y de su correspondiente revisión por el Tribunal de Apelaciones, obraba sobre los casos individuales de los recurridos. La Resolución Enmendada emitida posteriormente en cada caso no fue más que la continuación del cauce procesal del cual formó parte la Resolución original.

contrario, continuaron y cuando el Juez Administrativo emitió las Resoluciones Enmendadas, los recurridos acudieron de nuevo al foro apelativo intermedio, **dentro de los mismos procesos bajo los cuales el Tribunal de Apelaciones había emitido su anterior Sentencia.** Por lo tanto, es forzoso concluir que la doctrina de cosa juzgada en su modalidad de impedimento colateral no aplica en el presente caso. Por otro lado, al utilizar la doctrina de la ley del caso, aplicable en estas circunstancias, alcanzamos el mismo resultado.

**B.**

La doctrina de la ley del caso opera para que los dictámenes que hayan sido objeto de adjudicación dentro de un mismo caso no puedan ser objeto de reexaminación por el tribunal que los pautó. Véase *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 606-07 (2000). Como recientemente puntualizamos, para que un dictamen judicial adquiera el carácter de ley del caso, éste debe constituir una decisión final en los méritos de la cuestión considerada y decidida. Véase *Cacho Pérez v. Hatton Gotay*, 2016 TSPR 51, 195 DPR ____, en la pág. 9.

Es pertinente señalar que la doctrina de la ley del caso es aplicable tanto a tribunales de instancia como a tribunales apelativos. *Id*. Reiteramos que "las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y

decididas. **Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve ante su consideración**". *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005) (énfasis en el original suprimido) (énfasis suplido).

Por último, cabe hacer la salvedad que la doctrina de la ley del caso no es una de aplicación mecánica. Principalmente, la doctrina es una al servicio de la justicia que propende a que las controversias litigadas y decididas se respeten por el tribunal como finales. Véase *Mgmt. Adm. Servs. Corp.*, 152 DPR en las págs. 607-08. Por lo tanto, en situaciones excepcionales, frente a la posibilidad de que se cometa una grave injusticia, el tribunal puede aplicar una norma de derecho distinta para evitar un resultado indeseable. Véase *Cacho Pérez*, en la pág. 10; *Félix*, 165 DPR en la pág. 844.

En el caso de autos, la primera Sentencia emitida por el Tribunal de Apelaciones impidió que el Juez Administrativo considerara cuestiones de derecho relacionadas al plan de cesantías establecido por la Junta de Directores de la ACAA, como lo sería una reclamación sobre la legalidad de la fecha de corte establecida. Éste sólo podía auscultar cuestiones de hecho al palio del plan de cesantías; no podía atender cuestionamientos a la legalidad de éste. Esta Sentencia advino final y firme sin que fuera objeto de revisión por los recurridos. Incluso,

en la Sentencia, el foro apelativo intermedio le concedió un término de treinta días a los recurridos para que acudieran al Tribunal de Primera Instancia. Ante ese foro podían ventilar cualquier cuestión de derecho fuera de la jurisdicción del Juez Administrativo, entiéndase, todo lo que no correspondiera al puro cómputo matemático de la antigüedad de los empleados, calculado hasta la fecha de corte establecida por la Junta de la ACAA. Dicha determinación del Tribunal de Apelaciones obligó tanto al Juez Administrativo como al foro apelativo cuando los recurridos acudieron nuevamente ante él, ya emitidas las Resoluciones Enmendadas en sus respectivos procesos administrativos.

Ya que la primera Sentencia del Tribunal de Apelaciones obligaba a ese foro cuando el caso llegó a su consideración nuevamente, resta considerar si nos encontramos dentro de una de esas circunstancias excepcionales que ameritan que el foro apelativo haya aplicado una norma de derecho distinta. Considero que no. Claramente, los recurridos tuvieron la oportunidad de cuestionar la fecha de corte uniforme mediante la presentación de una demanda ante el Tribunal de Primera Instancia, como le instruyó explícitamente el Tribunal de Apelaciones. Éstos no la aprovecharon. Por lo tanto, nada impide la aplicación de la doctrina de la ley del caso frente a este cuadro fáctico.

**III**

Por las razones expuestas, estoy conforme con revocar las Sentencias del Tribunal de Apelaciones y reinstalar los dictámenes emitidos por el Juez Administrativo en sus Resoluciones Enmendadas.


Anabelle Rodríguez Rodríguez
Juez Asociada