Berta BAEZ–CRUZ, et al.,
Plaintiffs, Appellants,

v.

MUNICIPALITY OF COMERIO,
et al., Defendants, Appellees.

No. 97–1850.

United States Court of Appeals,
First Circuit.

Heard Dec. 2, 1997.

Decided March 31, 1998.

Charles S. Hey–Maestre, Piedras, PR, with whom Adalina De Jesus–Morales was on brief, for Plaintiffs, Appellants.

Francisco San Miguel Fuxench, San Juan, PR, with whom Miguel Pagan was on brief for Appellee, Municipality of Comerio.

Sigfredo Rodriguez–Isaac, Assistant Solicitor General, with whom Carlos Lugo Fiol, Solicitor General, Edda Serrano Blasini, Deputy Solicitor General, were on brief for individual Appellees.

Before SELYA, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
BOUDIN, Circuit Judge.

CAMPBELL, Senior Circuit Judge.

Plaintiffs-appellants Berta Baez–Cruz and twenty-three of her former co-workers brought this action in the district court under 42 U.S.C. § 1983 against the municipality of Comerio, Puerto Rico, and four of its officials. Plaintiff-appellants alleged that their dismissal from municipal employment was based on their political affiliation in violation of the First and Fourteenth Amendments and the laws of Puerto Rico. Previously, Plaintiffs had sought reinstatement by the Puerto Rico administrative body that handles government employment disputes. That body denied relief to Plaintiffs in a decision that the Puerto Rico Supreme Court ultimately affirmed.

Following the Puerto Rico Supreme Court's affirmance, the district court granted Defendants' motion for summary judgment. It reasoned that Plaintiffs were collaterally estopped from arguing that their dismissal was politically based by a contrary finding in the Commonwealth proceedings. Plaintiffs have appealed. The question we face is whether, under Puerto Rico law, the administrative body's findings preclude relitigation of Plaintiffs' termination. We affirm.

## FACTS

1. *Tension Between Comerio Municipal Employees and the New Comerio Administration*

In 1992, the citizens of Comerio elected Defendant Luis Rivera Rivera ("Rivera"), a member of the New Progressive Party (the "NPP"), as their Mayor. That election ended a half-century of rule in Comerio by the Popular Democratic Party (the "PDP"). Other members of the NPP administration included Defendant Domingo Marcano, Internal Auditor; Defendant Rufino Ayalo, Director of Public Works; and Defendant Damian Rivera, Director of Civil Defense. Plaintiffs, all members of the rival PDP, were career municipal employees.

The months following Rivera's assumption of the mayoral post were marked by tension between the municipality and its employees. In their complaint, Plaintiffs alleged that they perceived the new administration to be

discriminating against PDP holdovers by subjecting them to sudden transfers, threats, and revocation of privileges. Plaintiffs and other employees protested this perceived mistreatment by declaring a one-day work stoppage. The Municipality admonished the protesters and withheld their pay for the strike day.

After Mayor Rivera refused to negotiate, Plaintiffs and those in agreement declared another strike, which directly led to their dismissal. The dismissed employees announced a four-day work stoppage, with a protest on the first day in front of City Hall. Mayor Rivera responded by activating, through Defendant Damian Rivera, the municipality's civil defense to provide Comerio with essential services. Plaintiffs and their fellows saw the civil defense forces as strike-breakers. The City Hall protest led to physical and verbal confrontations between the civil defense force and the strikers.

Following the work stoppage, the municipality investigated the strike, which, the parties agree, violated Puerto Rico law forbidding municipal employees to strike. The municipality's auditor, Defendant Domingo Marcano, reviewed the municipality personnel department's attendance records to determine who participated in the strike. The Municipality then informed forty-eight employees of their dismissal.

### 2. The Administrative Proceedings

The forty-eight terminated employees immediately requested a hearing before the Puerto Rico Personnel Administration Systems Appeal Board (known by its Spanish acronym, "JASAP"), the administrative body that handles government employment disputes. See P.R. Laws Ann. tit. 3, § 1394(1). JASAP's examining officer recommended that only those employees who could be identified as having participated in the strike be terminated. The investigation positively identified only the twenty-four Plaintiffs in this action. The municipality quickly reinstated the other twenty-four employees, but refused to reinstate the twenty-four Plaintiffs.

Plaintiffs contested the examiner's recommendations before the JASAP. JASAP upheld the examiner, adopting her findings of fact and conclusions of law. As a "Conclusion of Law," the examining officer's report stated that,

The appellant party [the strikers-Plaintiffs] brought to our consideration that the dismissal was due to reasons of political ideology. It arises from evidence that all the employees who participated in the strike belonged to the [PDP]. (Findings of Fact No. 23) Nevertheless, once the administrative hearings were held not all the forty-eight (48) employees who participated in [the] strike were dismissed, but twenty-four (24) employees. There were twenty-four "Populares" [i.e., members of the PDP] who were reinstated after the administrative hearing with the discount of the day.

### 3. The § 1983 Action

On the same day that JASAP denied Plaintiffs' motion for reconsideration, Plaintiffs brought the instant action under 42 U.S.C. § 1983 in the United States District Court for the District of Puerto Rico. The complaint alleged that the terminations and prior disciplinary measures violated Plaintiffs' rights conferred by the Federal Constitution to free expression and association, equal protection of the law, and procedural due process. Also included within the federal complaint were claims under the law of the Commonwealth of Puerto Rico. Defendants filed their answer, and, based on the JASAP Report's findings, they moved for summary judgment.

The district court stayed the proceedings, including discovery, while Plaintiffs appealed from the JASAP decision to the Puerto Rico courts. Plaintiffs' appeal was rebuffed at every turn. The Superior Court, the Circuit Court, and, ultimately, by a 3–2 decision, the Supreme Court of Puerto Rico each affirmed JASAP's decision.

Soon after the Supreme Court of Puerto Rico rendered its decision, the district court granted Defendants' motion for summary judgment. The district court held that JASAP's determination "that [in the court's words] the sole reason for plaintiffs' dismiss-

al was their participation in an illegal strike," collaterally estopped Plaintiffs' political discrimination claim. The district court also held that Plaintiffs failed to demonstrate a genuine issue of material fact in their procedural due process claim, and then dismissed without prejudice the remaining claims under Puerto Rico law.

Plaintiffs filed a Rule 59(e) motion to vacate and/or to amend the judgment, arguing that Puerto Rico's rules of collateral estoppel did not preclude relitigation of a factual issue unless the parties in the second suit were identical to the first. The individual officials, defendants here, were not parties to the JASAP proceeding. Thus, Plaintiffs argued, the JASAP decision could not collaterally estop a claim involving these new parties. The district court rejected this contention, and this appeal followed.

## DISCUSSION

### 1. *Background*

■ To survive summary judgment in a case alleging unconstitutional political discrimination in public employment, an employee must produce evidence that her political affiliation was a "substantial" or "motivating" factor behind the challenged employment decision. *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *see also Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 39 (1st Cir.1993). Even if such a link is shown between political affiliation and the adverse employment action, the employee's claim will still fail if the employment decision would have occurred regardless of plaintiff's political affiliation. *See Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993).

Here, the district court accurately described the JASAP proceedings as establishing "that the sole reason for Plaintiffs' dismissal was their participation in an illegal strike." The JASAP examiner expressly rejected Plaintiffs' contention that "the dismissal was due to reasons of political ideology," reasoning that the municipality rein-

stated twenty-four of the forty-eight originally dismissed workers (all of whom shared the same party affiliation) after the hearing examiner had found no proof of their participation in the strike. The Puerto Rico Supreme Court noted this finding in affirming the JASAP decision and concluded that "JASAP did not err when it decided that the action of dismissal of petitioners herein was within the legal frame of action permissible of the municipality." It would not have been permissible for JASAP to have determined that Plaintiffs' termination was lawful under the "merit principle" of Puerto Rico's Personnel Law, P.R. Laws Ann. tit. 3, § 1331, if it had found the termination was based on Plaintiffs' political affiliation. *See Diaz de Llovet v. Governor*, 112 P.R. Offic. Trans. 941, 953–54 (1982) (discussing *Branti v. Finkel*, 455 U.S. 507 (1980)). A finding for Plaintiffs in the present action would, therefore, necessarily contradict JASAP's prior determination that the dismissals were not based on "reasons of political ideology" but rather on the strike, as affirmed by the Puerto Rico Supreme Court.

■ The Full Faith and Credit statute, 28 U.S.C. § 1738, provides that "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories ... as they have by law or usage in the courts of such State [or] Territory ... from which they are taken."[1] It is well-settled that a proceeding in a state court collaterally estops inconsistent arguments in a later federal action, including actions under § 1983. *Allen v. McCurry*, 449 U.S. 90, 104–05, 101 S.Ct. 411, 419–21, 66 L.Ed.2d 308 (1980). Preclusive effect is given not only to state judicial proceedings, but also to facts found by a "state agency acting in a judicial capacity [that] resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *University of Tenn. v. Elliott*, 478 U.S. 788, 798, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). The applicable collateral estoppel rules are not federally created, but are those of the state from which the judg-

---

1. It is clear that § 1738 applies to the judgments of Puerto Rico courts, *see also* 48 U.S.C. § 734 (providing that unless otherwise specified, feder-

al statutes applicable to states apply to Puerto Rico), and no one here argues to the contrary.

ment is taken. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982).

■ These rules frame the central question in this appeal: whether the district court was correct in holding that Puerto Rico's issue preclusion doctrine "bound [it] to accept those issues which have already been litigated by the parties and adjudicated by the J.A.S.A.P. Hearing Examiner" and affirmed by the Puerto Rico courts. To answer this question in the affirmative requires both that the collateral estoppel rules of Puerto Rico would preclude the issue in a Puerto Rico court and that Plaintiffs had a "full and fair opportunity to litigate" the factual claims. The district court's grant of summary judgment is subject to our *de novo* review.

2. *Issue Preclusion Under Puerto Rico Law*

■ Puerto Rico's doctrine of preclusion, codified at 31 P.R. Laws Ann. tit. 31, § 3343, provides in pertinent part:

> In order that the presumption of res adjudicata be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such.

Although the statute speaks of "res judicata," i.e., claim preclusion, it also permits issue preclusion, or "collateral estoppel by judgment." *See Texaco Puerto Rico, Inc. v. Medina*, 834 F.2d 242, 245–46 (1st Cir.1987) (citing *A & P Gen. Contractors v. Associacion Cana, Inc.*, 10 P.R. Offic. Trans. 987, 995–96 (1981)). The district court here concluded that because the Puerto Rico Supreme Court had affirmed JASAP's finding that Plaintiffs' termination was not the result of political discrimination, Plaintiffs were collaterally estopped from relitigating the issue of political discrimination in a federal court.

Plaintiffs attack this conclusion on several grounds, which we consider in turn.

A. *Non-identity of Parties*

■ Plaintiffs point out that the present action includes new parties on both sides. First, the federal complaint added one new plaintiff—the spouse and conjugal partnership of an original plaintiff. Second, and more significantly, the federal complaint included as defendants the four municipal officials in their individual capacities; they were not and could not have been parties before JASAP.

■ The rather strict wording of Puerto Rico's mutuality requirement is not a bar to appellees' defense. Although the language of the provision calls for "the most perfect identity of persons" between the first and second case, we have noted on a number of occasions that the Puerto Rico courts do not read the requirement literally. *See, e.g., Futura Dev. Corp. v. Centex Corp.*, 761 F.2d 33, 43 (1st Cir.1985). The preclusion statute itself goes on to provide that,

> there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations [i.e., "a performance of something due upon an obligation" according to *Webster's New International Dictionary* 1796 (1971)] among those having a right to demand them, or the obligation to satisfy the same.

P.R. Laws Ann., tit. 31, § 3343. We have read this provision as permitting issue preclusion to operate against a plaintiff who adds defendants in the second action. *See Futura*, 761 F.2d at 43; *Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth.*, 674 F.2d 952, 955–56 (1st Cir.1982); *cf. De Leon v. Colon*, 42 P.R.R. 21, 27 (1931) (permitting preclusion based on previous action that included additional defendants); *Restatement (Second) of Judgments* § 51(1).[2]

---

**2.** Plaintiffs note the particularly strict interpretation of the mutuality requirement provided in the district court decision in *Buenrostro v. Collazo*, 777 F.Supp. 128 (D.P.R.1991), *aff'd on other*

grounds, 973 F.2d 39 (1st Cir.1992) (affirming denial of summary judgment based on official immunity). There, the district court held that officers sued in a federal § 1983 action could not

The municipality and its officers share, in the words of § 3343, the "obligation to satisfy the same [claim]"; this shared obligation is, under these circumstances, sufficient to allow preclusion. "Identity of parties and interest is required so that a party's rights and obligations will not be determined without their knowledge or an opportunity for participation." *Futura*, 761 F.2d at 43. As Plaintiffs were themselves active participants in the JASAP proceedings and the consequent appeals, their own addition of the officer defendants will not defeat the defense of collateral estoppel by judgment.

### B. *Identity of Causes*

 Plaintiffs' second challenge avers that the instant action and the JASAP proceedings lack an identity of "causes," or the factual predicate for relief. Plaintiffs argue that their § 1983 action involves a different cause because JASAP's jurisdiction is limited to claims under Puerto Rico's Personnel Law. This argument mistakes the legal cause of action for the factual "cause" contemplated by Puerto Rico's preclusion statute: preclusion requires an identity of the latter, not the former. As the Supreme Court of Puerto Rico has explained, a "cause" includes " 'the principal ground, the origin or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties.' " *Lausell Marxuach v. Diaz de Yanez*, 3 P.R. Offic. Trans. 742, 748 (1975) (quoting VIII–2 Manresa, *Comentarios al Codigo Civil Espanol* 301 (6th ed.1967)). The Supreme Court of Puerto Rico has also stated that identity of causes is unnecessary when the defense is one of issue preclusion, rather than claim preclusion. *See A & P Gen. Contractors*, 10 P.R. Offic. Trans. at 996 (explaining that "collateral estoppel by judgment" is "a variant of res judicata where identity of causes is not necessary"). Even were collateral estoppel by judgment to require an identity of causes, we would have no trouble concluding that the two cases' identical subject matter satisfied that requirement.

### C. *Public Policy Exception*

 The Puerto Rico courts have recognized an exception to the doctrine of preclusion "whenever its application would defeat the ends of justice, [e]specially in the presence of public policy considerations." *Pagan Hernandez v. University of Puerto Rico*, 107 P.R. Offic. Trans. 795, 807 (1978). However, "[t]he mere invocation of a constitutional right against an administrative act is not a key which would automatically move [the court] to reject the presumption of res judicata." *Id.* Plaintiffs argue that the JASAP finding should not bind them in light of the public policy favoring access to the federal courts to seek redress for deprivations of constitutional rights. However, while employees must exhaust their administrative remedies before bringing a judicial action in the Puerto Rico courts, *see Pierson Muller v. Feijoo*, 106 P.R. Offic. Trans. 1153, 1158 (1978), they were not required to do so before bringing a § 1983 action in federal court, *see Patsy v. Board of Regents*, 457 U.S. 496, 515, 102 S.Ct. 2557, 2567, 73 L.Ed.2d 172 (1982). Plaintiffs chose to proceed first in the JASAP before suing in the federal courts; public policy does not require giving them a chance to revisit that choice.

### D. *Full and Fair Opportunity To Litigate*

 Plaintiffs claim that the JASAP proceeding did not afford them the "full and fair opportunity to litigate" required of any decision later given preclusive effect. *See Allen*, 449 U.S. at 95, 101 S.Ct. at 415. To meet this standard, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897.

 Plaintiffs' main proposition is that they were unable to argue their federal constitutional claims before JASAP because the

take advantage of a prior Commonwealth trial to which they were not a party. *See id.,* 777 F.Supp. at 133–34. The district court stated that "the failure to raise claims in a prior suit as to *some* defendants has no effect on the permissibil-

ity of raising those same claims against *other* defendants." *Id.* (emphasis in original). To the extent it implies there are no exceptions to absolute mutuality, *Buenrostro* does not accord with Puerto Rico doctrine as we understand it.

Commonwealth administrative proceedings were restricted to determining solely whether dismissal of Plaintiffs violated Puerto Rico's Personnel Law. However, JASAP expressly considered and rejected Plaintiffs' contention that they were dismissed "due to reasons of political ideology," finding that the strike was responsible for their dismissal. This factual issue is the basis of Plaintiffs' federal constitutional claim. It is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself was unable to consider the federal claim as such. *See, e.g., Gonsalves v. Alpine Country Club,* 727 F.2d 27, 28–29 (1st Cir. 1984). As in *Kremer,* Plaintiffs could not prevail on their federal claim consistently with the prior finding of no discrimination. *See* 456 U.S. at 479, 102 S.Ct. at 1896. Thus, JASAP's factual conclusion may be given collateral estoppel effect regardless of any inability by the administrative body to consider Plaintiffs' federal constitutional claims.

Finally, Plaintiffs point out that only one of the twenty-four plaintiffs testified before JASAP; they allege no other procedural defects in the JASAP proceedings. Certainly, the ability to give evidence is a crucial factor in answering whether a party has been afforded a full and fair opportunity to litigate. However, nothing in the record indicates that Plaintiffs' failure to testify resulted from JASAP's refusal to allow them to do so. For all we can tell, they simply chose not to give evidence before JASAP. *See Lopez Vives v. Police,* 8 P.R. Offic. Trans. 264, 278 (1987) (explaining that JASAP must honor "the right of an aggrieved party to present all the evidence necessary to sustain his claim, as well as to, orally or in writing, rebut the evidence brought against him"). On the present record, this argument is undeveloped and ultimately insufficient to raise any issue of the denial of due process. *Cf. United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

The judgment is *affirmed.* Costs to appellees.