# United States Court of Appeals
## For the First Circuit

No. 19-1474

MARÍA S. DÍAZ-BÁEZ; VÍCTOR A. BURGOS-TORRES; THELMA L. PÉREZ-GUZMÁN; MARISOL DOMÍNGUEZ-RIVERA; HÉCTOR J. ALBELO-CARTAGENA; MÓNICA MOLINA-SALAS; RAMÓN L. RIVERA-GASCOT; SYLVIA ALVARADO-HERNÁNDEZ; PEDRO R. MARTÍNEZ-AGOSTO; CARMEN E. MEDINA-ADORNO; PEDRO I. CARTAGENA-RODRÍGUEZ; EDUARDO BARREIRO-DIAZ; MELIXA MARRERO-GONZÁLEZ; MERCEDES LAMBERTY-ROMÁN; CARLOS A. AQUINO-VALENTÍN; DEBBIE A. CARDONA-CAPRE; DIANA I. SÁNCHEZ-PAGÁN; FÉLIX MARRERO-VÁZQUEZ; GISSELLE PAGÁN-MELÉNDEZ; SHIERLY CARDONA-ORTIZ; ROSA M. SOTO-GARCÍA; LIMARI MARTÍNEZ-RODRÍGUEZ; MARIEL TORRES-LÓPEZ; ANTONIO J. COLLADO-RIVERA; VIVIAN M. BRACERO-ROSA; LUIS COSS-VARGAS; BRAULIO E. FIGUEROA-DÍAZ; ROSA M. SANTOS-CARBALLO; KAROLIE GÓMEZ-RIVERA; OMAR RIVERA-PÉREZ; CLARIBEL ROSADO-FERNÁNDEZ; IVÁN E. GONZÁLEZ-GARCÍA; JOSÉ GRAU-ORTIZ; BRENDA MARTÍNEZ-FIGUEROA; CIRILO TIRADO-RIVERA; BETZAIDA ROSARIO-FÉLIX; VIRGILIO ESCOBAR-QUIÑONES; LUZ CRISTINA JIMÉNEZ-CORTÉS; HÉCTOR M. BARRIOS-VELÁZQUEZ; MÓNICA RODRÍGUEZ-OCASIO; DANIEL RAMOS-RAMOS; CARMEN HAYDEÉ RAMOS-LUNA; MELISA RIVERA-FUENTES; MARIELI RÍOS-PÉREZ; EVELYN VELÁZQUEZ-ADORNO; JOSÉ W. ORTIZ-LÓPEZ; CÉSAR E. DEIDA-TORRES; DAVID R. SHERMAN; REBECCA COTTO-OYOLA; DAVID PONCE-MENA; NATIVIDAD CURBELLO-CONTRERAS; VIRGINIA ECHEVARRÍA; PEDRO FÉLIX-TORRES; RUTH M. MELÉNDEZ-RODRÍGUEZ; ZUHER YOUSSIF-YASSIN; ASTRID M. DELGADO-IRIZARRY; TIRSO RODRÍGUEZ-APONTE; YANIRA RODRÍGUEZ-RIVERA; VIVIAN A. HERNÁNDEZ-ROBLES; ROBERTO MIRANDA-SANTIAGO; ADA I. RIVERA-GARCÍA; JOSÉ E. FIGUEROA-NIEVES; ALLAN WAINWRIGHT-ESTAPE; DAISY RODRÍGUEZ-ALEJANDRO; RADAMÉS PÉREZ-RODRÍGUEZ; MARÍA I. DELANNOY-DE-JESÚS; MANUEL R. REYES ALFONSO; AMARILIS RIVERO-QUILES; LUIS LAGARES-GARCÍA; ROCÍO RIVERA-TORRES; JONATHAN R. ORTIZ-SERRANO; CONJUGAL PARTNERSHIP ALBELO-HERNÁNDEZ; CONJUGAL PARTNERSHIP BARREIRO-ROSARIO; CONJUGAL PARTNERSHIP BURGOS-DÍAZ; CONJUGAL PARTNERSHIP CARTAGENA-MEDINA; CONJUGAL PARTNERSHIP COLLADO-TORRES; CONJUGAL PARTNERSHIP COSS-BRACERO; CONJUGAL PARTNERSHIP FÉLIX-ECHEVARRÍA; CONJUGAL PARTNERSHIP FIGUEROA-RIVERA; CONJUGAL PARTNERSHIP FIGUEROA-SANTOS; CONJUGAL PARTNERSHIP GRAU-VÁZQUEZ; CONJUGAL PARTNERSHIP MARRERO-PAGÁN; CONJUGAL PARTNERSHIP MARTÍNEZ-ALVARADO; CONJUGAL PARTNERSHIP MIRANDA-HERNÁNDEZ; CONJUGAL PARTNERSHIP MULER-VELÁZQUEZ; CONJUGAL PARTNERSHIP ORTIZ-ACEVEDO; CONJUGAL PARTNRESHIP PONCE-COTTO; CONJUGAL PARTNERSHIP RAMOS-RODRÍGUEZ; CONJUGAL PARTNERSHIP REYES-DELANNOY; CONJUGAL

PARTNERSHIP RODRÍGUEZ-RODRÍGUEZ; CONJUGAL PARTNERSHIP RIVERA-ROSADO; CONJUGAL PARTNERSHIP TIRADO-MARTÍNEZ; CONJUGAL PARTNERSHIP LAGARES-RIVERO,

Plaintiffs, Appellants,

JUANA M. CONTRERAS-CASTRO; LEILA A. HERNÁNDEZ-JIMÉNEZ; YELITZA I. HERNÁNDEZ-HERNÁNDEZ; YALITZA ROSARIO-MENENDEZ; RAQUEL CARDONA-SOTO; MARIBEL ALICEA-LUGO; HUMBERTO L. MULER-SANTIAGO; MARIELA TORRES-MOLINI; CARMEN YOLANDA VÁZQUEZ-ORTIZ; LUIS A. RODRÍGUEZ-TORO; NEREIDA RIVERA-BATISTA; BERNICE BERBERENA-MALDONADO; RICARDO ROSARIO-SÁNCHEZ; AXEL FRESSE-ÁLVAREZ; GLORIELY MIRANDA-OCASIO; LUIS A. MULER-SANTIAGO; GRETCHEN M. ACEVEDO-RIVERA; DOMINGO MARIANI-MOLINI; REBECA M. NEGRÓN-UMPIERRE; JORGE APARICIO-TORRES; CARMEN E. RODRIGUEZ-SANTIAGO; LYNETTE YAMBÓ-MERCADO; MARIANNA RAMÍREZ-ÁLVAREZ; CONJUGAL PARTNERSHIP FRESSE-MIRANDA; CONJUGAL PARTNERSHIP ROSARIO-BERBERENA,

Plaintiffs,

v.

JULIO ALICEA-VASALLO, Executive Director of the AACA, in his official and personal capacities; AUTOMOBILE ACCIDENT COMPENSATION ADMINISTRATION,

Defendants, Appellees,

MARIBEL CONCEPCIÓN-CANTRES, former Personnel Director of the AACA, in her official and personal capacities; ABC INSURANCE COMPANY; ERNESTO RIVERA-NEGRÓN; RICHARD DOE; JANE ROE; JANE DOE; JOHN DOE; X CORPORATION; Y CORPORATION; DEF INSURANCE COMPANY; CONJUGAL PARTNERSHIP ALICEA-DOE; CONJGAL PARTNERSHIP DOE-CONCEPCIÓN; CONJUGAL PARTNERSHIP RIVERA-ROE,

Defendants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

———————————

Before

Lynch, Thompson, and Kayatta,
<u>Circuit Judges</u>.

---

<u>José Enrico Valenzuela-Alvarado</u>, with whom <u>Valenzuela-Alvarado, LLC</u>, <u>Frank Zorrilla Maldonado</u>, <u>Frank Zorrilla Law Offices</u>, <u>Jesús Rabell Méndez</u>, <u>Rabell Méndez C.S.P.</u>, <u>Manuel Porro-Vizcarra</u>, and <u>Manuel Porro-Vizcarra Law Offices</u> were on brief, for appellants.

<u>Adrián Sánchez-Pagán</u>, with whom <u>Sánchez-Betances, Sifre & Muñoz-Noya, LLC</u> was on brief, for appellee Automobile Accident Compensation Administration.

<u>Francisco J. Amundaray</u>, with whom <u>Amundaray, Villares & Associates, PSC</u> was on brief, for appellee Julio Alicea-Vasallo.

---

December 23, 2021

---

**LYNCH**, **Circuit Judge**.    Certain former Automobile Accident Compensation Administration ("AACA") employees appeal the entry of summary judgment against their political discrimination claims, in favor of the AACA and its former Executive Director, Julio Alicea-Vasallo.  The employees were laid off pursuant to an agency-wide, facially neutral layoff plan (the "Layoff Plan") based on seniority.  They brought suit under 42 U.S.C. § 1983, alleging violations of their federal First, Fifth, and Fourteenth Amendment rights, along with violations of Puerto Rico law. Holding it was bound by the Puerto Rico court decisions concluding that it was the Board of Directors -- not the Executive Director -- that was responsible for the Layoff Plan, the district court correctly adopted the Puerto Rico court decisions, then entered summary judgment for both AACA and Alicea-Vasallo.  Diaz-Baez v. Alicea Vasallo ("Diaz-Baez II"), No. 10-cv-1570, 2019 WL 8501708, at *23-27 (D.P.R. Mar. 29, 2019).  Appellants concede that if the district court correctly adopted these issues decided by the Puerto Rico courts, the case must be resolved against them.  We affirm.

I.

A. Factual History

The AACA is a public instrumentality of Puerto Rico, created pursuant to Law No. 138 of June 26, 1968, P.R. Laws Ann. tit. 9, § 2051 et seq.  Its purpose is to "administer[] Puerto Rico's unique system of compensating automobile accident victims,

- 4 -

irrespective of fault, for medical expenses, disability, dismemberment, death, and funeral expenses." Bonilla v. Nazario, 843 F.2d 34, 36 (1st Cir. 1988). Appellants agree that the AACA has an identity distinct and separate from the Commonwealth of Puerto Rico and that it is a public entity that can "sue and be sued in its own name, [] can contract with others and except for its original funding, [] is [primarily] self-supporting . . . ." Oppenheimer Mendez v. Acevedo, 388 F. Supp. 326, 330 (D.P.R. 1974), aff'd, 512 F.2d 1373 (1st Cir. 1975).[1]

Between 2001 and 2008, the Popular Democratic Party ("PDP"), of which appellants assert they are members, was in power in Puerto Rico. For decades, including that period, the AACA operated at a loss and had mounting financial deficits. AACA's June 30, 2006 Financial Statement stated that the agency's "premium income" had been "insufficient to cover the operating expenses" for the "past several years." This required the AACA frequently to withdraw from its investment portfolio "to cover operating funding needs." A separate report prepared by the AACA's then-Director of Finance, William Jiménez, covering the 2005-2006 fiscal year contained an acknowledgment by the AACA's Board of Directors that the agency had accrued a cumulative deficit totaling more than $99 million between the fiscal years 1998-1999 and 2004-

---

[1] In Spanish, the agency's name is the Administración de Compensaciones por Accidentes de Automóviles ("ACAA").

- 5 -

2005.  This report also showed that the agency was operating at about an $8.0 million deficit for the 2005-2006 fiscal year.

In 2007, the Board considered measures to reduce both its costs and its operational deficit.  Jiménez recommended to the Board that the AACA reduce its workforce by more than 100 employees and close four offices and two Departments, among other measures.  Jiménez proposed that additional personnel cuts be made during the 2007-2008 fiscal year to reduce the operational deficit.

The Board declined to adopt any of these measures to address the deficit.  Instead, the Board approved several amendments to its Personnel Regulations, purporting to provide additional protection for the AACA's managerial employees against layoff.  One such amendment required the AACA to consider employee performance as a criterion when determining priority for layoff.

In November 2008, the New Progressive Party ("NPP") came into power in Puerto Rico.  This constituted a change in administration from the PDP.  The newly-elected Governor of Puerto Rico issued Executive Order OE-2009-001 on January 8, 2009, decreeing an economic and fiscal state of emergency in the Commonwealth and ordering the elimination of nearly one third of politically appointed positions.  The legislature of Puerto Rico enacted Act No. 7-2009 ("Law 7") in March 2009, P.R. Laws Ann. tit. 3, § 8791 et seq., establishing seniority as the primary criterion used to implement this layoff plan, id. § 8799(b)(3).

Although the AACA was not covered by Law 7, the Board of Directors simultaneously was evaluating the agency's fiscal state and considering a similar plan. The Board discussed the Executive Order at a January 16, 2009 Board meeting. At that Board meeting, AACA's Deputy Director of Finance, Rebecca Cotto, also reported that the AACA was operating at a $15 million deficit and was asked about the measures the AACA was taking to remedy this. Similar discussions continued through May 2009, when NPP member Alicea-Vasallo was appointed Executive Director of the AACA. The AACA continued operating at a deficit at that time, including a loss in the category of insurance operations in the amount of more than $63 million.

The AACA Board of Directors held another meeting to discuss this fiscal state on October 15, 2009, at which the Board discussed with Alicea-Vasallo the creation of the Layoff Plan. During that meeting, the Board's president inquired of the Executive Director concerning a layoff plan that would save the AACA between $4.5 and $5 million. In response, Alicea-Vasallo explained that the way to accomplish that degree of reduction, the plan would be to lay off employees based on seniority (as did Law 7), covering a period from July 1, 2000 through June 30, 2009. That is, employees with less than nine years of public service as of June 30, 2009 (the "cut-off date") would be subject to the Plan. Alicea-Vasallo represented that this would affect fewer managerial

- 7 -

employees than the layoff plan recommended by Jiménez in 2007. Plaintiffs allege that, because of the cut-off date, the plan targeted employees who had been hired during the PDP administration. The Board also passed Resolution No. 2009 Oct-17A that day, amending the Personnel Regulations to eliminate the consideration of employee performance -- a subjective criterion -- for layoffs and to place seniority as the primary criterion.

Within two weeks, the Board also approved the Layoff Plan recommended by the Executive Director via Resolution No. 2009 OCT 21A, which would lay off all managerial employees with less than nine years of public service by the June 30, 2009 cut-off date. The resolution stated, specifically, that:

> Be it hereby Resolved by the Board of Directors of the Automobile Accident Compensation Administration to approve the implementation of the Lay Off Decree Plan in all aspects because they are found to be adequate and serve the purposes of improving the grave fiscal situation of the agency and also to safeguard the rights of employees who render services at [AACA].

Alicea-Vasallo gave notice of the Layoff Plan adopted by the Board to all relevant employees between November 10, 2009 and January 7, 2010 in accordance with the Plan. This notice informed the employees of their right to request both an informal administrative hearing within five days of the notification and a review of their dismissal before an administrative judge within thirty days, citing Article 18 of the Personnel Regulations.

Article 18.3 of the Regulations further authorizes employees to file a petition for review of the administrative judge's decision with the Puerto Rico Circuit Court of Appeals. All of the plaintiffs in this case had less than nine years in public service by the selected cut-off date, although not necessarily by the date their layoffs became effective. The layoffs became effective on March 19, 2010.

The AACA's June 30, 2011 Financial Statement showed that these cost reduction measures had in fact reduced both the amount of the annual losses and the agency's net deficit. The statement showed a loss in 2011 in the category of insurance operations in the amount of approximately $1 million, i.e., a more than ninety percent reduction in losses compared to the previous year. The statement further reported a decrease in the agency's net deficit by $20 million, and, between 2010 and 2011, "no withdrawals were made from the investment portfolio to finance operating activities."

B. Procedural History

The Layoff Plan has led to multiple administrative and judicial proceedings which we briefly describe.

i. The Instant Case

It is uncontested that the dismissed AACA employees were deemed career employees in public service with protected property interests in their continued employment. Rodriguez-Sanchez v.

Mun. of Santa Isabel, 658 F.3d 125, 129 (1st Cir. 2011).  On June 22, 2010, sixty-two such former employees filed this § 1983 action, claiming that they were dismissed illegally from their respective positions following the election of the NPP in 2008 due to their affiliation with the PDP.  Plaintiffs charge defendants with "conspir[ing] in order to design and implement a scheme to wrongfully dismiss plaintiffs due exclusively to their political affiliation," in violation of the AACA's Personnel Regulations and federal and Puerto Rico law.  They allege that Alicea-Vasallo intentionally set the seniority requirement for the Layoff Plan at nine years through only June 30, 2009 -- rather than plaintiffs' formal date of layoff -- to target employees hired while the PDP was in power.  Plaintiffs seek reinstatement and damages.[2]

---

[2]    After the district court largely denied defendants' motion to dismiss the complaint in March 2011, the plaintiffs filed two amended complaints to name additional former AACA employees as co-plaintiffs, and the parties consented to proceed before a magistrate judge.  Since then, plaintiffs Juana M. Contreras-Castro, Leila A. Hernández-Jiménez, Yelitza I. Hernández-Hernández, Yalitza Rosario-Menéndez, Raquel Cardona-Soto, Maribel Alicea-Lugo, Humberto L. Muler-Santiago, Mariela Torres-Molini, Carmen Yolanda Vázquez-Ortiz, Luis A. Rodríguez-Toro, Nereida Rivera-Batista, Bernice Berberena-Maldonado, Ricardo Rosario-Sanchez, Axel Fresse-Álvarez, Gloriely Miranda-Ocasio, Luis A. Muler-Santiago, Gretchen M. Acevedo-Rivera, Domingo Mariani-Molini, Rebeca M. Negrón-Umpierre, Jorge Aparicio-Torres, Carmen E. Rodríguez-Santiago, Lynette Yambó-Mercado, Marianna Ramirez-Álvarez, Conjugal Partnership Fresse-Miranda, and Conjugal Partnership Rosario-Berberena have voluntarily dismissed their claims and thus are not participating in this appeal.  Further, the only defendants participating in the appeal are the AACA and Alicea-Vasallo.

- 10 -

On May 2, 2012, plaintiffs moved for "partial" summary judgment, requesting that the district court declare the Layoff Plan discriminatory in purpose and implementation. The court denied the motion, holding that plaintiffs "failed to adduce evidence showing that defendants had knowledge of the identities or political affiliations of the [plaintiff] workers in each position" and that the political discrimination claims were "speculative and unsupported." Diaz-Baez v. Alicea Vasallo ("Diaz-Baez I"), No. 10-cv-1570, 2012 WL 5566444, at *4 (D.P.R. Nov. 15, 2012).

After the close of discovery, both parties filed summary judgment motions. Diaz-Baez II, 2019 WL 8501708, at *9. In August 2015, the district court entered a stay based on Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), because the Puerto Rico Supreme Court was considering the validity of several dismissals under the Layoff Plan in Rodríguez-Ocasio v. ACAA, 197 P.R. Dec. 852, 2017 WL 1449701 (P.R. 2017). The federal proceedings were stayed "until such time as the Puerto Rico Supreme Court resolves the pending issues before it."[3]

---

[3] Plaintiffs had appealed the stay and, on appeal, we questioned the parties as to whether the automatic stay under the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2161 et seq. ("PROMESA"), applied to this case. We dismissed the appeal as moot before deciding the issue. It remains unclear whether the PROMESA stay applies, but we need not reach the question because it is not an issue of Article III jurisdiction. See Moriarty v. Colvin, 806 F.3d 664, 668 (1st Cir.

The Supreme Court promulgated its opinion in Rodríguez Ocasio in April 2017, "reinstat[ing] the rulings issued by the Administrative Judge of the [AACA]" which upheld the dismissals pursuant to the Plan. 197 P.R. Dec. at 857. Thereafter, the district court denied without prejudice the parties' pending summary judgment motions. Amended summary judgment proceedings ensued, and concluded with the district court granting defendants' motions and denying plaintiffs' as moot. Diaz-Baez II, 2019 WL 8501708, at *35.

As we consider the preclusive effect of the Puerto Rico courts' decisions dispositive as to the pending appeal, we do not further describe the proceedings before the district court. We instead turn to the relevant Puerto Rico court proceedings.

ii. Related Cases

Several judicial and administrative challenges to the Layoff Plan also took place during the relevant time period. We summarize only those cases necessary to our issue preclusion analysis, starting with Humberto Muler v. ACAA, No. 2010-va-43, KLRA 201001000, 2010 WL 5877970 (P.R. Cir. Nov. 24, 2010).

---

2015) (bypassing the statutory jurisdictional question because "resolving this case on the merits by affirming the grant of summary judgment has the same consequences as concluding that we do not have jurisdiction" (citing Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 54 (1st Cir. 1999))); Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143-44 (1st Cir. 2007) (similar).

After the layoffs became final, the dismissed employees filed a formal administrative appeal before the AACA's Office of Hearing Examiner (also titled the "Administrative Judge"). As those proceedings were pending, the Puerto Rico Supreme Court issued an opinion in Molini Gronau v. Corporación de Puerto Rico para la Difusión Pública, 179 P.R. Dec. 674 (P.R. 2010), in which the court held that an administrative judge lacked jurisdiction to review the validity of a severance plan recommended by another corporation's executive director and approved by its board of directors. The Supreme Court explained that the Court of First Instance had exclusive jurisdiction over that board's actions.

Thereafter, twenty-seven of the current plaintiffs questioned whether the Administrative Judge had jurisdiction to consider the merits of the Layoff Plan in this case. Humberto Muler, 2010 WL 5877970, at *1. These plaintiffs argued by analogy that the Administrative Judge lacked jurisdiction because, as in Molini Gronau and contrary to their current position, it was the Board of Directors -- not the Executive Director -- which approved the Plan. Id. at *5. The Administrative Judge rejected this argument, ruling that it retained jurisdiction over the challenges to the Layoff Plan because it was the Executive Director who made the final layoff decision. Id. at *6. The twenty-seven former employees appealed that ruling to the Commonwealth's Circuit Court of Appeals.

- 13 -

The appellate court framed the question on appeal as: "whether the layoffs announced in the [AACA] as a result of the implementation of the Layoff Plan [a]pproved by the Board of Directors were determined by the corporation's Executive Director or by the Board of Directors." Id. at *11. The court concluded that the ultimate responsibility for the Layoff Plan belonged to the Board of Directors and not the Executive Director. Id. at *15. Accordingly, it reversed the Administrative Judge's exercise of jurisdiction over the Layoff Plan's validity and instructed the agency that it could review only the calculation of seniority as to the employees. Id. at *13-15. That decision was not appealed, rendering it final.

The employees' claims were remanded back to the Administrative Judge for the agency to evaluate the seniority calculations. The Administrative Judge ruled that all of the employees laid off had less than nine years of public service by the cut-off date, and confirmed the layoffs. Ignoring the decision in Humberto Muler just described, the Administrative Judge also reviewed the legality of the Plan's cut-off date in the various individual's cases on appeal. Analogizing to Law 7 of March 9, 2009, P.R. Laws Ann. tit. 3, § 8791 et seq., which was upheld by the Puerto Rico Supreme Court in Sánchez Collazo v. Departmento de la Vivienda, 184 P.R. Dec. 95 (P.R. 2011), the Administrative Judge held that the Plan's use of a cut-off date was valid. Twelve

former employees appealed this ruling on the ground that it was error for the Administrative Judge to rely on Law 7 and Sánchez Collazo.

The Puerto Rico Circuit Court of Appeals rendered inconsistent decisions on appeal. Eight cases affirmed the administrative decision, whereas four reversed based on the Administrative Judge's reliance on Law 7. Without questioning the Administrative Judge's jurisdiction to consider the validity of the Layoff Plan, the courts reversing the decision held that Law 7 did not apply to the AACA and the uniform cut-off date utilized in the Layoff Plan was invalid. The AACA petitioned the Puerto Rico Supreme Court for review of those rulings.

The Supreme Court granted certiorari in three of the reversals and consolidated the appeals in Rodríguez-Ocasio v. AACA, 197 P.R. Dec. 852 (P.R. 2011). The Supreme Court reversed the Circuit Court of Appeals, holding that the decision in Humberto Muler that administrative judges lacked jurisdiction to consider the validity of the Layoff Plan constituted "the law of the case." Rodríguez-Ocasio, 197 P.R. Dec. at 863-66. Because the Administrative Judge lacked such jurisdiction, it was error for the Circuit Court of Appeals to review the agency's conclusion as to the validity of the Layoff Plan. Id. at 867-68.

II.

Plaintiffs' primary appellate argument is that the district court erred by concluding that plaintiffs were either precluded or estopped from arguing that it was the Executive Director, not the Board of Directors, who was responsible for the Layoff Plan. At oral argument, plaintiffs' counsel conceded that this appeal turns entirely on the answer to this question of who made the adverse employment decision. Counsel stated that if we find, as we do, that the Board made the decision, there is nothing left of the lawsuit.

Orders granting summary judgment are reviewed de novo, "drawing all reasonable inferences in favor of the non-moving party." Pac. Indem. Co. v. Deming, 828 F.3d 19, 23 (1st Cir. 2016) (quotations and citation omitted). Our review of a district court's res judicata determination is likewise reviewed de novo. Grajales v. P.R. Ports Auth., 923 F.3d 40, 43 (1st Cir. 2019). "[W]e apply Puerto Rico Law to determine the preclusive effect of the judgment of the Court of First Instance." Id. A district court's application of the doctrine of judicial estoppel is reviewed for abuse of discretion. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30 (1st Cir. 2004).

A.    Issue Preclusion

The district court was correct to conclude the twenty-seven plaintiffs who were also party to Humberto Muler are

- 16 -

precluded from relitigating the fact that it was AACA's Board of Directors who approved the Layoff Plan. See Diaz-Baez II, 2019 WL 8501708, at *23-24. Puerto Rico's Civil Code provides that,

> [i]n order that the presumption of res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31, § 3343. The statute covers both claim and issue preclusion. Baez-Cruz v. Municipality of Comeiro, 140 F.3d 24, 29 (1st Cir. 1998).

Despite "the rather strict wording of Puerto Rico's mutuality requirement," the inclusion of new parties in a case "is not a bar to the application of [issue preclusion]." Sánchez-Núñez v. P.R. Elec. Power Auth., 509 F. Supp. 2d 137, 146 (D.P.R. 2007) (citing Baez-Cruz, 140 F.3d at 29). Nor is perfect identity of causes required "when the defense is one of issue preclusion, rather than claim preclusion." Baez-Cruz, 140 F.3d at 30 (citing A & P Gen. Contractors v. Asociación Caná Inc., 10 P.R. Offic. Trans. 984, 996 (P.R. 1981)). Instead, issue preclusion "forecloses relitigation in a[ny] subsequent action of a fact essential for rendering a judgment in a prior action between [primarily] the same parties, even when different causes of action are involved." Cruz Berríos v. Gonzalez-Rosario, 630 F.3d 7, 12 (1st Cir. 2010) (quotations and citation omitted). Courts apply

this doctrine to reduce litigation expenses, conserve judicial resources, and cultivate reliance on judicial decisions by avoiding inconsistent conclusions.  Id. at 11.

The twenty-seven plaintiffs who were party to Humberto Muler are precluded from questioning, for at least the second time, who is responsible for the Layoff Plan.  A material question in both cases has been whether the Board of Directors or the Executive Director was responsible for the Plan.  Compare Diaz-Baez II, 2019 WL 8501708, at *23, with Humberto Muler, 2010 WL 5877970, at *11. The plaintiffs were given a full and fair opportunity to litigate the question of who approved the Plan in Humberto Muler, and the Circuit Court of Appeals rendered a final judgment concluding that it was the Board of Directors.  2010 WL 5877970, at *15 ("[I]n this case it was the Board of Directors which made the decision to layoff (1) the management employees, (2) and establish the benchmark of having been employed 9 years or less . . . .");  see also Kremer v. Chem. Const. Corp., 456 U.S. 461, 481 (1982) (holding that "full and fair opportunity to litigate" is satisfied by minimum procedural requirements of the Fourteenth Amendment). Plaintiffs -- who failed to appeal the Humberto Muler decision -- are barred from taking a second bite of the apple in this litigation.  See also Rodríguez Ocasio, 197 P.R. Dec. at 853 (holding that Humberto Muler constitutes "law of the case" as to

- 18 -

the issue of jurisdiction, which depends on who approved the Layoff Plan).

Plaintiffs' arguments to the contrary lack merit. The arguments misconstrue the doctrine of issue preclusion under Puerto Rico law, which requires neither strict identity of parties nor causes of action. See Baez-Cruz, 140 F.3d at 29 (reading § 3343 "as permitting issue preclusion to operate against a plaintiff who[, as here,] adds defendants in the second action."); id. at 30 ("The Supreme Court of Puerto Rico has [] stated that identity of causes is unnecessary when the defense is one of issue preclusion, rather than claim preclusion.").

B.    Judicial Estoppel

The district court also held that the remaining sixteen plaintiffs were judicially estopped from relitigating the question of who approved the Layoff Plan. In 2010, these plaintiffs, among others, moved to intervene in another case filed in the Court of First Instance challenging the Layoff Plan, María Díaz-Báez v. ACAA, No. K PE2009-4889. In this motion, the former employees stated that:

> [w]e observe that the Regulation does not confer power on the Examining Officer to review the decisions of the Board of Directors. In this case, the approval of the Cessation Plan becomes a product of the Board of Directors that is neither subject to revision by the Examining Officer nor by the Executive Director. This intricate process

- 19 -

> renders the notification of a hearing as completely defective.

Their motion was allowed. The plaintiffs having successfully taken the position previously that it was the Board of Directors who approved the Layoff Plan, the district court estopped these plaintiffs from taking the opposite position in this litigation, citing Alternative System Concepts Inc., 374 F.3d at 32-33 ("[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant . . . in a prior legal proceeding . . . .").

The federal doctrine of judicial estoppel "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 32 (1st Cir. 2021) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)). It "is designed to ensure that parties proceed in a fair and aboveboard manner, without making improper use of the court system." Id. (quoting InterGen N.V., 344 F.3d at 144).

In general, three conditions must be satisfied for the doctrine of judicial estoppel to apply: "First, the estopping position and the estopped position must be directly inconsistent," Alt. Sys., 374 F.3d at 33, "[s]econd, the responsible party must have succeeded in persuading a court to accept its prior position,"

id., and "[t]hird, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court," Knowlton v. Shaw, 704 F.3d 1, 10 (1st Cir. 2013) (citation omitted).

These plaintiffs' appellate brief does not even attempt to challenge the district court's application of the necessary conditions.[4] They have made no developed or cognizable argument that there was an abuse of discretion by the district court in its judicial estoppel finding.[5] These plaintiffs waived the argument that judicial estoppel does not apply by failing to develop it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### III.

Because appellants concede that this appeal turns on whether the district court correctly concluded that they are barred from arguing in this litigation that the Executive Director, and

---

[4]    We need not decide whether federal law or Puerto Rico law governs the application of judicial estoppel because the plaintiffs do not address the question and fail to develop any argument under either jurisdiction's law. See Thorne v. Howe, 466 F.3d 173, 181 n.1 (1st Cir. 2006). The text above articulates the familiar federal standard.

[5]    These plaintiffs at most cite one inapposite case in a footnote, see A & P Gen. Contractors, 10 P.R. Offic. Trans. 984 (analyzing the doctrine of res judicata, but not judicial estoppel), and argue that judicial estoppel requires strict mutuality of parties.

not Board of Directors, is responsible for the Layoff Plan, the judgment is <u>affirmed</u>.