ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Parte Apelante<br><br>v.<br><br>ROBERTO R. FÉLIX GERMOSÉN<br><br>Parte Apelada | KLAN202400664 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2023CV02452<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece la parte apelante, Banco Popular de Puerto Rico (BPPR o parte apelante) y solicita que revoquemos la sentencia emitida y notificada el 14 de mayo de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante el referido dictamen, el foro apelado denegó la solicitud de sentencia sumaria presentada por BPPR y acogió la solicitud de sentencia sumaria presentada por el Sr. Roberto R. Félix Germosén (Sr. Félix Germosén o apelado). En consecuencia, desestimó con perjuicio la causa de acción instada por BPPR.

Por los fundamentos que se exponen a continuación, se confirma la sentencia apelada.

**I.**

El 4 de agosto de 2023, BPPR instó una demanda sobre cobro de dinero en contra del Sr. Félix Germosén.[1] En síntesis, alegó que

---
[1] Apéndice del recurso, págs. 1-8.

el 13 de junio de 2003, le concedió una línea de crédito comercial por la cantidad de $200,000.00 a la extinta corporación del Sr. Félix Germosén, Rofel of Puerto Rico, Inc. (Corporación). Añadió que, el Sr. Félix Germosén suscribió una *Garantía Ilimitada y Continua* para garantizar las obligaciones contractuales de la Corporación[2] y que este dejó de pagar el préstamo según pactado, a pesar de las gestiones de cobro. Por ello, BPPR solicitó al foro primario que declarase con lugar la demanda y condenara al Sr. Félix Germosén a satisfacer las sumas reclamadas[3], entre otros remedios.

El 25 de octubre de 2023, el Sr. Félix Germosén presentó *Contestación a Demanda.*[4] En esta, admitió que BPPR le concedió una línea de crédito a favor de su extinta corporación y negó el resto de las alegaciones, haciendo mención sobre su derecho a descubrimiento de prueba sobre lo alegado. Como parte de sus defensas afirmativas, el Sr. Félix Germosén alegó que la demanda estaba prescrita y que la línea de crédito concedida constituía un préstamo mercantil cuyo término para cobrarse venció.

Luego de varios trámites procesales, el 30 de noviembre de 2023, BPPR presentó *Moción de Sentencia Sumaria*[5]. En esta propuso cinco (5) hechos materiales que no están en controversia. En esencia, alegó que la deuda reclamada era una líquida, vencida y exigible y que solo restaba adjudicar el alcance de la garantía y el monto de lo debido. Además, en apoyo de su solicitud, BPPR anejó nuevamente copia de los documentos que presentó junto a la

---

[2] Junto a la demanda, BPPR acompañó los siguientes documentos: Anejo 1-Anejo al contrato-FlexiCuenta de Negocios; Anejo 2-Garantía Ilimitada Continúa; Anejo 3-Carta de Cobro del 14 de abril de 2023.

[3] A saber, $80,288.41 en concepto del principal, $51,574.31 en concepto de intereses acumulados al 22 de febrero de 2023, los cuales continúan acumulándose diariamente, más costas, gastos y honorarios de abogado, así como los cargos, recargos y gastos que se acumulen hasta la fecha de pago total y completo.

[4] Véase, Apéndice del recurso, Anejo 7, págs. 21-23.

[5] *Íd.*, Anejo 9, págs. 25-38.

demanda[6]. También incluyó una declaración jurada suscrita por una oficial autorizada de BPPR.[7]

El 30 de enero de 2024, el Sr. Félix Germosén presentó *Oposición a Moción de Sentencia Sumaria.*[8] En primer lugar, alegó que no procedía dictar sentencia sumaria debido a la existencia de controversia sustancial sobre hechos materiales. También esgrimió varios argumentos, entre los cuales estaba: que la solicitud era prematura, pues el apelado tenía derecho a realizar descubrimiento de prueba; que el banco carecía de causa de acción, debido a que la fianza objeto del pleito se extinguió con la obligación principal, además de la inacción del banco en sus gestiones de cobro. Arguyó que BPPR no presentó evidencia sobre el préstamo, ni el historial de pago y que solo se limitó a hacer alegaciones generales de que adeudaba las sumas reclamadas, sin evidenciar desde qué fecha se computaron los intereses. Por último, señaló que de concederse la solicitud de sentencia sumaria presentada por BPPR, se le violaría su derecho a un descubrimiento de prueba sobre las alegaciones de la demanda y la prueba que BPPR presentó de forma incompleta. Por lo anterior, solicitó se declarase sin lugar la solicitud de sentencia sumaria de BPPR y se ordenara la continuación de los procedimientos.

En esa misma fecha, el Sr. Félix Germosén presentó una *Moción de Sentencia Sumaria.*[9] En esta, incluyó extensa prueba documental y declaraciones en apoyo de su solicitud e incorporó las alegaciones vertidas en su oposición a la solicitud de sentencia sumaria de BPPR. Expuso que procedía la desestimación de la demanda con perjuicio debido a que el préstamo en controversia prescribió desde el año 2019, por tratarse de un préstamo mercantil,

---

[6] Véase, nota al calce 2.
[7] Véase, apéndice del recurso, págs. 33-34.
[8] Anejo 13, págs. 43-244.
[9] Apéndice del recurso, Anejo 14, págs. 245-258.

y que el alegado contrato de fianza, sujeto a la validez y vigencia de la obligación principal, se extinguió junto con la obligación principal. Como fundamento adicional, indicó que la referida fianza se extinguió ante la inacción del banco en sus gestiones de cobro lo que lo privó de subrogarse en la posición del acreedor demandante. Por lo anterior, solicitó se dictara sentencia sumaria a su favor, y se desestimara la demanda con perjuicio.

Al día siguiente, BPPR presentó *Moción en Oposición a "Moción de Sentencia Sumaria"*.[10] Primero, arguyó que, dado que el Sr. Félix Germosén alegaba que como cuestión de derecho la causa de acción debía desestimarse por prescripción, la solicitud de éste estaba cobijada por la Regla 10.2 y no por la Regla 36.2 de Procedimiento Civil.[11] Luego, alegó que el apelado no satisfizo el estándar probatorio para determinar que la línea de crédito constituía un préstamo mercantil, es decir, un acto de comercio y no un acto civil, por lo que aplicaba el término prescriptivo de quince (15) años del Código Civil de 1930.[12] Añadió que, en virtud de la *Garantía Ilimitada y Continua,* el Sr. Félix Germosén se obligó como fiador solidario, por lo que BPPR podría reclamarle directamente el pago de la totalidad de la deuda. Por ello, solicitó se denegara de plano la solicitud de sentencia sumaria del apelado.

El 1 de febrero de 2024, el TPI emitió una *Resolución*[13] en la que determinó lo siguiente:

> Vista la Moción de Sentencia Sumaria, presentada por la parte demandada y la Oposición a Moción de Sentencia Sumaria, el Tribunal resuelve lo siguiente:
>
> *1. Por entender que estamos ante una solicitud de desestimación y no de sentencia sumaria, atendemos la misma como tal y la declaramos No H[a] Lugar por ahora.*

---

[10] Anejo 15, págs. 445-448.
[11] *Íd.*, nota al calce 1.
[12] El Código Civil de Puerto Rico de 1930, vigente al momento de los hechos del caso, fue derogado y sustituido mediante la Ley 55-2020, aprobada el 1 de junio de 2020, conocida como *Código Civil de Puerto Rico de 2020*.
[13] Apéndice del recurso, pág. 451. El TPI nada dispuso en cuanto a la solicitud de sentencia sumaria presentada por BPPR.

2. Se conceden 60 días para concluir el descubrimiento de prueba documental y 30 días adicionales para la toma de deposiciones.

[…]

(Cursivas nuestras).

Así las cosas, el 13 de febrero de 2024, el Sr. Félix Germosén presentó *Moción Sometiendo Declaración Jurada en Apoyo a Moción de Sentencia Sumaria[14]*. En esta, informó que, de la documentación producida por BPPR durante el descubrimiento de prueba, surgía de que el último pago realizado a la línea de crédito se efectuó el 14 de julio de 2016, esto es, siete (7) años antes de que se presentara la demanda y que, posterior a dicha fecha, ni la Corporación ni el apelado habían reconocido la deuda reclamada ni renovado los documentos de la línea de crédito. Por lo anterior, solicitó se declarara con lugar su solicitud de sentencia sumaria.

Concluido el periodo de descubrimiento de prueba, el 2 de mayo de 2024, el Sr. Félix Germosén presentó *Moción Reiterando Solicitud de Sentencia Sumaria.* En esta, solicitó al foro primario que diera por sometida las mociones de sentencia sumaria, oposiciones y réplicas presentadas. Respecto a su *Moción de Sentencia Sumaria,* precisó que esta fue presentada de conformidad con la Regla 36 de Procedimiento Civil y no bajo la Regla 10.2 sobre desestimación. Por su parte, BPPR no se expresó en torno a la solicitud del apelado.

El 14 de mayo de 2024, el TPI emitió *Sentencia Sumaria.[15]* En esta, consignó las siguientes determinaciones de hechos materiales sobre los cuales no existe controversia sustancial:

1. La prestataria Rofel of Puerto Rico, Inc. (en lo sucesivo, Rofel) era una corporación con fines de

---

[14] Apéndice del recurso, Anejo 20, págs. 462-464.
[15] En la sentencia apelada, el TPI hizo referencia a las mociones de sentencia sumaria, oposiciones y réplicas presentadas. En lo aquí atinente, expresó lo siguiente: El 1 de febrero de 2024, este Tribunal notificó *denegando por el momento* las mociones antes mencionadas y concedió 60 días para concluir el descubrimiento de prueba y treinta días para tomar deposiciones. (Cursivas nuestras).

lucro, organizada en el Departamento de Estado de Puerto Rico el 16 de diciembre de 1998, con oficinas sitas en la carretera número 1, km 27.4, barrio Quebrada Arena, Caguas, PR 00725. Desde su incorporación se dedicó al negocio de fabricación y venta de materiales de impermeabilización de techos.

2. El fiador demandado se desempeñó como presidente de Rofel desde su incorporación en el año 1998 hasta que ésta cesó operaciones a principios del año 2016. El 18 de abril de 2016, se entregó el local que Rofel tenía arrendado en la calle Caguax, esquina Mabó, Isla Grande.

3. El último informe anual presentado por Rofel en el Departamento de Estado de Puerto Rico fue para el año 2015, y su certificado de incorporación fue revocado el 21 de diciembre de 2018. Para los años 2016 y 2017 no se presentaron los informes anuales ante el Departamento de Estado, debido a que Rofel había cesado operaciones.

4. La contadora Ana Morales Colón le brindaba a Rofel todos los servicios de contabilidad que necesitaba para sus operaciones, tales como: pagos a suplidores, transferencias internacionales en pago a suplidores de mercancía para reventa o distribución, o en pago de materia prima, preparar la nómina, preparar las planillas corporativas, informes trimestrales, informes mensuales de IVU, seguro social y contribuciones retenidas a empleados, informes anuales al Departamento de Estado, entre otros.

5. Además de sus servicios de contabilidad, desde el año 2010 hasta el año 2012, Ana Morales Colón se desempeñó como administradora de Rofel, con todas las funciones que el fiador demandado ejercía como su presidente, debido a que éste tuvo que separarse temporalmente de su cargo para ser sometido a una operación de trasplante de hígado.

6. En junio de 2003, Rofel obtuvo una línea de crédito con el Banco Popular de Puerto Rico, por la suma de $200,00.00, la cual estaba garantizada con un certificado de depósito de $50,000.00; y, el remanente de $150,000.00, por Small Business Administration. Rofel utilizó dicha línea de crédito exclusivamente para sufragar los gastos necesarios para las operaciones y funcionamiento efectivo de sus negocios, tales como: compra de inventario; compra de materia prima para la manufactura de materiales de impermeabilización de techos; transferencias internacionales en pago a suplidores; y, cuando fuera necesario, cubrir cualquier otro gasto operacional, como: nómina, mantenimiento de equipo, pago de renta, y otros gastos necesarios para sus operaciones.

7. Todos los dineros tomados a préstamo por Rofel de dicha línea de crédito fueron utilizados exclusivamente para las operaciones y funcionamiento de sus negocios, tales como pagos a suplidores de inventario y materia prima.

8. La línea de crédito de Rofel era necesaria porque las órdenes a los suplidores internacionales tenían que ser pagadas por adelantado, y los contenedores o vagones de mercancía que venían de Europa o América del Sur tardaban de dos a tres meses en llegar a Puerto Rico. Esta situación, junto a la demora de los clientes en pagar, afectaba el flujo de efectivo de las operaciones de Rofel, por lo que resultaba necesario utilizar su línea de crédito para esas transferencias a suplidores.

9. En abril de 2015, se contempló convertir la línea de crédito de Rofel en un préstamo a término, pero dicha transacción nunca se llegó a realizar.

10. El último pago a la línea de crédito y/o préstamo al que se refiere la demanda fue realizado el 14 de julio de 2016; o sea, siete (7) años antes de la presentación de la demanda de epígrafe.

11. Con posterioridad al 14 de julio de 2016, ni Rofel de Puerto Rico ni el fiador demandado han reconocido la deuda reclamada en el caso de epígrafe, ni han renovado los documentos de la línea de crédito y/o el préstamo al que se refiere la demanda.

12. Las únicas gestiones de cobro recibidas por el fiador demandado fueron las cartas de 23 de noviembre de 2021 y 14 de abril de 2023; o sea, cinco (5) y siete (7) años después de que Rofel cesara operaciones y tres (3) y cinco (5) años después de la revocación de su certificado de incorporación. La carta de 14 de abril de 2023 fue la única evidencia de las gestiones de cobro sometida por la parte demandante en su Moción de Sentencia Sumaria.

El foro primario determinó que BPPR no controvirtió ninguno de los hechos expuestos por el Sr. Félix Germosén en su solicitud de sentencia sumaria. A su vez, determinó que la solicitud de sentencia sumaria de BPPR no cumplió con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, además de que la relación de hechos materiales contenidos en su solicitud estaba basada en una declaración jurada y documentos inadmisibles.

Asimismo, el TPI concluyó que la línea de crédito en controversia constituye un préstamo mercantil, cuya causa de acción, conforme al Código de Comercio, se extingue a los tres (3)

años de su vencimiento y solo admite interrupción por demanda judicial, cuando el deudor reconoce la deuda o cuando se renueva del documento de préstamo– y no mediante interpelación extrajudicial. Ante el hecho de que el último pago al préstamo fue realizado el 14 de julio de 2016, y que luego de esa fecha no hubo reconocimiento de deuda por parte de la Corporación o del Sr. Félix Germosén, ni tampoco se renovó el documento de préstamo, el TPI concluyó que BPPR tenía hasta el 15 de julio de 2019 para presentar la demanda judicial, cosa que no hizo hasta el 4 de agosto de 2023. En virtud de lo anterior, el foro primario determinó que, al haberse extinguido la causa de acción sobre el préstamo mercantil, también se extinguió la causa de acción contra la fianza suscrita por el apelado.

Como fundamento adicional, el foro de instancia indicó que la fianza quedó extinta por la inacción de BPPR en sus gestiones de cobro, lo cual tuvo el efecto de privar al Sr. Félix Germosén como fiador demandado de su derecho a subrogarse en la posición del acreedor para que la extinta corporación lo compensara por cualquier suma que este se viera obligado a pagar. En virtud de ello, el TPI denegó la solicitud de sentencia sumaria presentada por BPPR, declaró con lugar la solicitud de sentencia sumaria presentada por el Sr. Félix Germosén y, en consecuencia, desestimó la demanda presentada por BPPR, con perjuicio.

El 22 de mayo de 2024, BPPR presentó *Solicitud de Reconsideración.* El 1 de junio de 2024, el Sr. Félix Germosén presentó escrito en oposición. Finalmente, el 10 de junio de 2024, notificada el 12 de junio de 2024, el TPI emitió una resolución en la cual denegó la solicitud de reconsideración de BPPR.

Insatisfecho con el dictamen, el 12 de julio de 2024, BPPR acude ante este foro y formuló el siguiente señalamiento de error:

ERRÓ EL TPI AL DICTAR SENTENCIA A BASE DE UNA MOCIÓN DE SENTENCIA SUMARIA PREVIAMENTE ACOGIDA Y DENEGADA COMO UNA MOCIÓN DE DESESTIMACIÓN, AUSENTE UNA SITUACION EXCEPCIONAL QUE ALTERARA DRAMÁTICAMENTE EL CASO.

El 12 de agosto de 2024, el Sr. Félix Germosén presentó su *Alegato en Oposición a Apelación*.

Evaluados los escritos presentados por las partes, así como los documentos que obran en el expediente, resolvemos.

## II.

## A.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2., permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra. A tales efectos, la referida regla lee como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.
>
> [...]
>
> 32 LPRA Ap. V, R. 10.2.

Por consiguiente, para disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir.*

*FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas PR*, 137 DPR 497, 505 (1994).

Por lo tanto, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 505. Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada. *Colón v. Lotería*, 167 DPR 625, 649 (2006).

**B.**

El principio rector de las Reglas de Procedimiento Civil es proveerle a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, supra, se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un

juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Es menester destacar, que solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.*, supra, pág. 299. Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. *Íd.* Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). En reiteradas ocasiones, el Tribunal Supremo ha establecido que se considera como un hecho esencial y pertinente, aquel que "puede afectar el resultado de la reclamación acorde con el derecho sustantivo aplicable". *Íd.*, pág. 213. Dicho esto, para que proceda una moción de sentencia sumaria no tan solo se requiere que haya una inexistencia de hechos en controversia, sino que también la sentencia que dicte el foro judicial tiene que proceder conforme al derecho sustantivo aplicable.

En particular, la Regla 36.2 de Procedimiento Civil, supra, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea,

sobre ningún componente de la causa de acción". *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 310 (2013).

Por su parte, el oponente a una solicitud de sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado, corre el riesgo de que se dicte sentencia en su contra. *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). Específicamente, la Regla 36.3 de Procedimiento Civil, supra, expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria.

Al amparo de dicha regla, en la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga, desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Asimismo, cabe destacar que, la Regla 36.5 de Procedimiento Civil, supra, establece que las declaraciones juradas para sostener u oponerse a una moción de sentencia sumaria que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, por lo que son insuficientes para demostrar la existencia de lo que allí se concluye.

Según dispone el caso de *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300 citando a *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 280-281 (1990), "al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria de los cuales surjan admisiones hechas por las partes".

Ahora bien, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra*, 186 DPR 713, 757 (2012); *Ramos Pérez v. Univisión*, supra, pág. 217. Además, no se debe adjudicar un caso sumariamente cuando existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa. *Íd.* pág. 219.

Además, conforme resuelto por el Tribunal Supremo en *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), este foro apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. *Íd.* Lo anterior, debido a que "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo". *Íd.* Igualmente, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Íd.* Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. *Íd.*

Por otro lado, en *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó

una moción de sentencia sumaria debemos: (1) examinar *de novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo*, supra; (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020).

### C.

Bajo nuestro ordenamiento jurídico, "las obligaciones y los derechos adjudicados mediante un dictamen judicial que adviene final y firme pueden constituir la ley del caso". *Rodríguez v. Ocasio v. ACAA*, 197 DPR 852, 863 (2017). Esto quiere decir que, como norma general, los planteamientos que ya han sido adjudicados por los foros judiciales –tanto tribunales de instancia como apelativos– no pueden reexaminarse. *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.*, 204 DPR 183, 201 (2020); *Mgmt. Adm. Servs, Corp. v. ELA*, 152 DPR 599, 606-607 (2000). Esta doctrina o principio tiene la finalidad de velar por el trámite ordenado y pronto de los litigios; además, promueve la estabilidad y certeza del derecho. *Rosso Descartes v. BGF*, 187 DPR 184, 193 (2012). Así pues, las partes en el pleito pueden, en la medida posible, conducir su proceder sobre directrices judiciales confiables y certeras. *Mgmt. Adm. Servs, Corp. v. ELA*, supra, págs. 607-608.

Un dictamen adquiere el carácter de ley del caso cuando constituye una decisión final en los méritos. *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.,* supra. Por consiguiente, no

puede invocarse o aplicarse esta doctrina cuando no existe una decisión final en los méritos que sirva de base para ello. *Mgmt. Adm. Servs, Corp. v. ELA,* supra, pág. 607. Específicamente, las determinaciones judiciales que generan este efecto son aquellas cuestiones finales consideradas y decididas por el tribunal. *Rodríguez Ocasio v. ACAA,* supra. De cumplir con dicho carácter de finalidad, estas decisiones obligan a los tribunales si la controversia vuelve ante su consideración. *Félix v. Las Haciendas,* 165 DPR 832, 843 (2005).

Ahora bien, dicha doctrina no es un mandato invariable o inflexible. *Rodríguez Ocasio v. ACAA,* supra, pág. 864. Más bien, es una norma que dirige la discreción del tribunal, sin limitar su poder. *Íd.* Es por ello, que se ha resuelto que en situaciones excepcionales, si la controversia o caso regresa al foro en cuestión y éste entiende que su decisión previa es errónea y/o puede causar grave injusticia, podría tomar otra determinación con la finalidad de "resolver de forma justa". *Berkan v. Mead Johson Nutrition Puerto Rico, Inc.,* supra, pág. 201. Puesto de otra forma, los tribunales pueden descartar la doctrina de la ley del caso solo cuando se atente contra los principios básicos de la justicia. (Énfasis suplido). *Noriega v. Gobernador,* 130 DPR 919, 931 (1992). Como ha dispuesto nuestro Tribunal Supremo, "[s]e trata de una doctrina al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados "manifiestamente injustos"". *Noriega v. Gobernador,* supra.

### III.

En el presente recurso, BPPR aduce que el foro primario incidió al emitir sentencia sumaria a favor del apelado, basado en la solicitud de sentencia sumaria previamente acogida y denegada como una solicitud de desestimación, sin que existiese una situación excepcional que así lo ameritara. Añade que la anterior

determinación no fue reconsiderada ni revisada, por lo que constituye la ley del caso y el foro primario no podía reexaminarla. No tiene razón.

Conforme surge de las incidencias procesales, en la resolución emitida el 1 de febrero de 2024, el foro primario, de forma preliminar, determinó acoger la moción de sentencia sumaria incoada por el Sr. Félix Germosén como una solicitud de desestimación, la declaró "no ha lugar *por ahora"*, y estableció los términos para concluir el descubrimiento de prueba y las deposiciones. De la anterior determinación, surge con claridad que el foro primario no dispuso de forma definitiva sobre la moción presentada por el apelado, sino que reservó su posterior determinación y además emitió órdenes relativas al descubrimiento de prueba, entre otros remedios sobre la continuación de los procedimientos. Nada impide que un tribunal posponga la disposición de una moción de sentencia sumaria hasta que se complete el proceso de descubrimiento de prueba. Así que, en el presente caso, al no existir una decisión final en los méritos sobre el asunto en controversia, tampoco aplica una ley de caso que imposibilitara la continuación del pleito.

Con el proceder del TPI, ambas partes tuvieron la oportunidad de beneficiarse de la información obtenida durante el descubrimiento de prueba. A través de dicho proceso, fue que el Sr. Félix Germosén sometió una declaración jurada respecto a la fecha del último pago realizado al préstamo, hecho que– hasta ese momento– estaba en controversia, pues el banco no había presentado prueba al respecto. Lo anterior, unido a la solicitud de sentencia sumaria presentada por el Sr. Félix Germosén -apoyada con prueba documental y declaraciones juradas- dejó establecido que el apelado era comerciante, que hacía negocios bajo el nombre de la Corporación y que utilizó la línea de crédito exclusivamente

para sufragar los gastos necesarios para las operaciones y funcionamiento efectivo de sus negocios, por lo cual, no cabía más que concluir que el préstamo objeto de la reclamación es uno mercantil. Quedó demostrado, además, que el último pago a la línea de crédito fue realizado el 14 de julio de 2016; o sea, siete (7) años antes de la presentación de la demanda de epígrafe. Con posterioridad a dicha fecha, ni la Corporación ni el fiador Félix Germosén han reconocido la deuda reclamada por BPPR, ni han renovado los documentos de la línea de crédito objeto de la reclamación. La carta de 14 de abril de 2023 fue la única evidencia de las gestiones de cobro sometida por el BPPR en su moción de sentencia sumaria.[16]

El BPPR no controvirtió los hechos expuestos por el Sr. Félix Germosén. Como parte oponente de la solicitud de sentencia sumaria, descansó en las aseveraciones o negaciones consignadas en su alegación, sin aportar prueba adicional que controvirtiera la presentada por el Sr. Félix Germosén. De igual forma, en su solicitud de sentencia sumaria, acompañó los mismos documentos que incluyó en su demanda, con una declaración jurada suscrita por su oficial autorizado. Empero, BPPR no presentó evidencia sobre el préstamo, ni el historial de pago y solo se limitó a hacer alegaciones generales sobre las sumas reclamadas.[17]

Conforme expuesto por el TPI en la decisión apelada, la causa de acción para reclamar el pago de un préstamo mercantil se extingue a los tres (3) años de su vencimiento, y solo admite interrupción por demanda judicial, cuando el deudor reconoce la

---

[16] La solicitud del Sr. Félix Germosén cumplió con los requisitos codificados en la Regla 36.3 de Procedimiento Civil. El apelado expuso los hechos esenciales e incontrovertidos, debidamente enumerados, así como los documentos que unió a su solicitud en apoyo a sus enunciados. También expuso los asuntos de derecho en controversia que justificaban la resolución sumaria a su favor, así como el remedio solicitado.

[17] De tal forma, la solicitud de sentencia sumaria de BPPR resultó ser insuficiente y su oposición no cumplió con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil.

deuda o cuando se renueva del documento de préstamo– y no mediante interpelación extrajudicial. En el presente caso, la prueba documental reflejó que el último pago al préstamo fue realizado el 14 de julio de 2016, y luego de esa fecha no hubo reconocimiento de deuda por parte de la Corporación o del fiador Félix Germosén. Tampoco se renovó el documento de préstamo.

Por tal razón, coincidimos con el foro apelado en cuanto a que, tratándose de un préstamo mercantil, BPPR tenía hasta el 15 de julio de 2019 para presentar la demanda judicial, cosa que no hizo hasta el 4 de agosto de 2023, vencido el plazo de tres años dispuesto en el Código de Comercio. Cualquier garantía suscrita por el Sr. Félix Germosén estaba subordinada a la naturaleza mercantil de la obligación principal y, por consiguiente, a su plazo prescriptivo. Por tanto, si la obligación principal de naturaleza mercantil se extinguió, la obligación accesoria de garantía, también mercantil, perdió toda eficacia jurídica.

En fin, examinados los escritos, concluimos que el foro primario actuó correctamente al concluir que no existe controversia genuina de hechos materiales que impidiera la resolución sumaria del pleito. Así pues, al no existir prueba de reclamación judicial alguna incoada dentro del término establecido en el Código de Comercio, la causa de acción del BPPR se extinguió y la obligación accesoria de garantía perdió su eficacia jurídica.

En virtud de lo anterior, resolvemos que no incidió el TPI al declarar con lugar la solicitud de sentencia sumaria presentada por el Sr. Félix Germosén y, en consecuencia, desestimar con perjuicio la demanda presentada por BPPR.

**IV.**

Por los fundamentos expuestos, se confirma la sentencia apelada.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones